First Baptist
Church of Ith-
aca
v.
Bigelow.

THE TRUSTEES OF THE FIRST BAPTIST CHURCH OF ITHACA
*vs.* BIGELOW.

In a sale of property at auction, the *auctioneer* is the agent of both parties, and the entry made by him of the name of a purchaser, and of the sum bid, is a sufficient *signing* or *subscription* of the memorandum, within the meaning of the statute of frauds, to charge the purchaser.

Such *memorandum*, to be valid, must contain every thing necessary to show the contract between the parties, so that there be no need of parol proof to explain the intention of the parties, or the terms of the agreement; and it was accordingly *held* in this case, where a pew in a church was sold at auction to the defendant, and the only memorandum of the sale was an entry made by the auctioneer on a chart or plan of the ground floor of the church, exhibited at the auction, of the *name* of the purchaser and of the *sum* bid by him, that the memorandum was not sufficient within the requirements of the statute; although, at the time of the auction, a written or printed advertisement, containing the *conditions of sale*, was exhibited and read to the purchasers.

The interest of a party in a pew in a church, although a limited and qualified interest, is *an interest in real estate*, and a contract for a pew for a period extending beyond one year is void, unless reduced to writing.

Whether it is necessary to the validity of a contract for the *purchase* of lands, that it should be reduced to writing and subscribed by the purchaser? *quere.*

THIS was an action of *assumpsit*, brought to recover the price of a pew in a church, sold to the defendant at vendue, tried at the Tompkins circuit in June, 1834. Previous to the erection of the church, a chart was made, exhibiting a plan of the pews on the floor of the church as intended to be constructed, distinguished by numbers, and a public auction was held for the sale of the pews, at which the plan was exhibited; at the same time was exhibited a written or printed advertisement containing the *conditions of sale*, which were, that the sums bid for the pews were to be paid in quarterly instalments—the payment of the last instalment, however, to be deferred until the church should be completed: which *conditions of sale* were read to the purchasers at the auction. One of the trustees of the church acted as *auctioneer*, and another person as his clerk. The defendant bid $60 for the pew designated on the plan as No. 74; it was struck off to him, and the clerk of the auc-

tioneer wrote the name of the defendant and the price bid by him for the pew on the plan or chart of the pews. The defendant delivered notes to the amount of about $30 to the auctioneer to collect, and apply the proceeds towards payment for the pew, who collected about *eight dollars* of the amount. The sale of the pews took place in 1829 or 1830, and the church was finished in about a year after the vendue. In 1832, the defendant was offered a deed for the pew purchased by him, which he refused to accept; and it was again tendered to him immediately previous to the commencement of this suit in October, 1833, when he again refused to accept it. The defendant insisted that the sale was void, within the statute of frauds, and on that ground moved for a nonsuit—which motion was overruled by the presiding judge. The defendant then proved a *mortgage* for $250, given by the plaintiffs to a Mr. Hoyt in 1827, upon the lot upon which the church was built, and also proved a *judgment* against them for upwards of $4000 in favor of a Mr. Mott. The plaintiffs proved that the mortgage was paid in the fore part of 1832, and that the judgment was satisfied in 1833, previous to the commencement of this suit. The defendant objected to proof of the satisfaction of the mortgage and judgment, unless notice of the same was brought home to him previous to or at the time of the tender of the deed. The judge overruled this objection also, and the jury, under his direction, found a verdict for the plaintiffs, which the defendant now moves to set aside.

*B. G. Ferris,* for the defendant.

*D. B. Stockholm,* for the plaintiffs.

By THE COURT. It is contended that the defendant was not bound to accept a deed, because the property was incumbered upon record, and no notice was given to him that the incumbrances had been paid off. It seems to be a good answer to this objection that the defendant never put his refusal to receive the deed upon that ground. At one time he said that he had bought it for his sister, and

ALBANY,
Oct. 1836.

First Baptist
Church of Ith-
aca
*v.*
Bigelow.

ALBANY,
Oct. 1836.

First Baptist
Church of Ith-
aca
v.
Bigelow.

she declined taking it; at another, that the person who sold the pew was not a proper auctioneer, and therefore he did not mean to pay for it; but never intimated that it was incumbered : that objection could easily have been removed.

It is also said that the sale was void by the statute of frauds, there being no note or memorandum in writing, according to the statute. It is left somewhat doubtful by the testimony, whether the sale of the pews was made before or after the 1st January, 1830, and of course whether the transaction is to be tested by the law of 1813 or by the revised statutes. By the former the agreement, or some note or memorandum thereof, was required to be in writing, signed by the party to be charged therewith, or some other person lawfully authorized. 1 R. L. 75, § 11. By the latter, the " contract, or some note or memorandum thereof expressing the consideration, must be in writing, and subscribed by the party by whom the lease or sale is to be made. It may be subscribed by an agent. 2 R. S. 135, § 8, 9. If the sale in this case was made since the 1st January, 1830, when the revised statutes took effect, it is very clear that no such note or memorandum was made as required by these statutes, as there is no pretence of any memorandum *expressing the consideration.* Besides, the revised statutes seem to have made provision for binding the *vendor* only, and not the *vendee.* By the former statutes the memorandum was valid if signed by *the party to be charged therewith;* by the latter, it is valid if subscribed by *the party by whom the sale is to be made.* It was surely not intended to make a subscription by the vendor obligatory upon the vendee ; and unless there is some other provision than this, the purchaser of real estate is not bound but by a valid written contract. On that point, however, it is unnecessary to express any opinion, as the counsel have argued the case as if the auction at which the pew in question was sold, took place under the former statute. By the adjudications upon that statute, both in England and in this state, it is settled that an auctioneer is the agent for both parties ; he clearly is *so* for the purchaser, as is shown by Chief Jus-

ALBANY,
Oct. 1836.

First Baptist
Church in Ith-
aca
v.
Bigelow.

tice Mansfield in *Emerson* v. *Hulis*, 2 Taunt, 46, approved and adopted by Chancellor Kent in *McComb* v. *Wright*, 4 Johns. Ch. R. 666, 667. The bidder announces his bid loudly, and particularly enough so to be heard by the auctioneer, and he does it for the purpose that his name may be written down opposite the lots to be sold ; the auctioneer accordingly writes the name of the purchaser by his authority, and therefore the contract is signed by an agent for the purchaser, and consequently is binding. There is no difference in the construction to be given in this respect, between the sections of the statute relating to real and personal property.

Assuming then that there was a sufficient signing of the memorandum in this case, made by the clerk of the auctioneer, the next inquiry is whether the memorandum itself was sufficient. The rule which seems to be adopted as to the contents of the memorandum is this ; that the memorandum must contain every thing that is necessary to show the contract between the parties, so that no parol evidence shall be necessary to explain the intention of the parties or the terms of the agreement. *Merrit* v. *Clason*, 12 Johns. R. 102. 14 id. 486. " Forms are not regarded," said the chancellor in the latter case, " and the statute is satisfied if the terms of the contract are in writing, and the names of the contracting parties appear." In that case the memorandum contained the snbstance of the agreement, as thus : " February 29. Bought for Isaac Clason of Bailey & Voorhies, 3000 bushels of good merchantable rye, deliverable from 5th to 15th of April next, at $1 per bushel, payable on delivery." Here are the names of the parties, the subject matter of the sale, the time of delivery, the price and the time of payment, and the fact stated that a sale had been made. In *Bailey &* *Bogert* v. *Ogdens*, 3 Johns. R. 399, 419, it was decided that the form of the memorandum of the bargain is not material, but it must state the contract with reasonable certainty, so that the substance of it can be understood from the writing itself, without having recourse to parol proof. If we test the memorandum made in this case by this rule, it will be

ALBANY,
Oct. 1836.

First Baptist
Church of Ith-
aca
v.
Bigelow:

found altogether insufficient. The only memorandum shown is the pasteboard plan of the ground floor of the church, and upon pew No. '74, is written the name of the defendant and the sum $60. The memorandum required is one which, without any extraneous proof, shows that something has been bought and sold for a certain price and between certain parties. The memorandum produced is totally defective ; it does not state that a sale was made of a pew, or any thing else ; it states no parties nor any terms of payment. The case of *Hinde* v. *Whitehouse*, 7 East, 558, shows what particularity is required in the memorandum. In that case the auctioneer had in his hands two papers, one a printed catalogue of the sugars to be sold, the other a paper containing the conditions of sale ; the papers were not fastened together. The auctioneer wrote, on the printed catalogue, in the same line with the lot purchased, the name of the purchaser and the price. It was held that the mere writing on the catalogue, not being by any reference incorporated with the conditions of sale, was not a memorandum of a bargain under those conditions of sale. It is clear therefore, according to the rule in England and in this state, that the entry made in this case is no memorandum under the statute. If introduced in evidence alone and without parol proof, it is utterly useless ; it gives no information whatever of a contract, nor of the terms. Even if it proved a sale, it is in no way connected with the written conditions, which made a part of the contract. There was therefore no memorandum in writing binding upon the defendant.

The plaintiffs contend that no writing was necessary, as the contract was for the sale of a pew in a church thereafter to be built ; that the contract is analogous to a bargain to make a carriage. The cases, however, are not similar. The one relates to an interest in lands, the other to personal property. Although the interest acquired in a pew in a church is a limited and qualified interest, it is notwithstanding an interest in real estate, and requires a writing to support it if the interest extends beyond a lease for one year ;

(when the auction took place, parol leases for three years were valid.)  In this case it purported to be unlimited, and therefore a parol agreement for the purchase was not valid.

New trial granted.