MILLER
v.
PELLETIER.

MILLER and another *v.* PELLETIER and WOLCOTT.

Since the revised statutes, a contract for the sale of lands is not complete unless the seller (personally or by agent lawfully authorized) subscribes the contract. A contract, signed or subscribed by a buyer only, cannot be enforced, the statute requires the seller to sign and is silent as to the purchaser.(a)

*July* 20, 1842.

*Vendor and Purchaser.*
*Auctioneer.*
*Sale.*

BILL of interpleader. The complainants were auctioneers; and by direction of the agent of the defendant, Marie Theresa Pauline Pelletier, they advertised the leasehold property, No. 7, Barclay street, New York, for sale by public auction. The bill, after showing this, went on as follows: "That in pursuance of the said advertisement and on the ninth day of March, the said premises were put up for sale at public auction by your orators at the said store and sales-room of your orators; that, thereupon, your orator Lawrence S. Forman publicly and distinctly proclaimed to the audience then present the terms and conditions of sale on which the said premises were to be sold, which terms and conditions were that ten per cent. of the purchase money should be paid down by the purchaser on the day of sale, the said ninth of March, and the balance of the said purchase money on the sixteenth day of March following, and that fifteen hundred dollars of such purchase money might remain on bond and mortgage on the said premises for the term of one year, on interest, at the rate of seven per cent. per annum. That the said premises, on such sale, were struck off to Noble K. Wolcott of the city of New York, he being the highest bidder for the same, at the sum or price of thirty-five hundred and ninety dollars, that being the highest sum bidden for the same; that, on the same day of such sale, the said Noble K. Wolcott paid to your orators ten dollars as your orator's fee for selling the said premises, and the sum of three hundred and fifty-nine dollars on account of the said purchase, that being ten per cent. of the sum at which they were purchased by the said Noble K. Wolcott. That your orators,

(a) And see case, since decided, of *Coles* v. *Bowne,* 10 Paige's C. R. 526.

thereupon, made out to the said Wolcott a receipt for the
said ten per cent. of purchase money and signed the same,
but the said Wolcott, either accidentally or designedly, left
your orator's store, without carrying away with him the
said receipt. Your orators further show, that the said Noble
K. Wolcott did not pay any other or further sum than is above
stated to your orators on account of the said purchase, but re-
fused to do so, alleging, on some ground taken by him, of
which your orators are ignorant, that he was not obliged to
complete the said purchase." The bill then went on to show
a demand by Wolcott of the deposit money; and that he
had commenced an action for it, while the said defendant
Mrs. Pelletier insisted upon her right to it. *Prayer*, that the
defendants interplead.

The defendant, Wolcott, in his answer, admitted as far as
the bill went, but, denied his legal liability; and stated that
a tenant of the premises had misled him as to their value.
The defendant, Maria T. P. Pelletier, insisted that Wolcott
ought to complete his purchase; and showed that she had
tendered an assignment of the household premises so bid off
at auction.

It appeared by testimony taken in the master's office, that
James Cole, the clerk of the auctioneer, and who stood by
his side at the time of sale, marked down the biddings. He
testified: "I stood alongside Mr. Forman on the stand and
put down the several biddings as they were made. The
figures $3,590, stating the amount at which the property
was struck off, are in my hand-writing and were put down
at the time the property was struck off. Mr. Forman sold
the property. Mr. Miller was sick at that time. The property
was sold at public auction fairly to the highest bidder. There
were a great many bids. N. K. Wolcott was the purchaser,
he being the highest bidder, and the property struck off to
him. I wrote down the name of Mr. Wolcott in the sales-
book as the purchaser; wrote it down as the clerk of the
complainants and under the direction of Mr. Forman; wrote
it down as soon as the property was struck off to him. Mr.
Wolcott, when the biddings were closed and the property
struck down, gave his name as purchaser, Wolcott. I asked
for his first name, and he replied 'N. K. Wolcott.' The

receipt for the ten per cent. of the purchase money, namely, three hundred and fifty-nine dollars, now produced to me, was written by Mr. Forman at the time of the sale, and handed by him to Mr. Wolcott. I saw him hand it to Mr. Wolcott, and Mr. Wolcott took it from him. I don't know what became of it afterwards; that was the last I saw of it until produced to me on this examination. Mr. Wolcott gave Mr. Forman a check on the Manhattan Bank for the amount of the deposit of ten per cent. and auction fees, amounting, altogether, to three hundred and sixty dollars; he filled up a blank check which we had in our office. The check was handed to Mr. Forman; and I afterwards took the check to the bank and received payment of it."

Mr. *Lockwood*, for the defendant Pelletier.

Mr. *C. Taylor*, for the defendant Noble K. Wolcott.

THE VICE-CHANCELLOR :—The question to be decided lies between the defendants, as to which of them is entitled to the sum of money paid into court upon the complainant's bill of interpleader? The facts are before me upon the report of the master, on a reference as between these parties. The money in question was the ten *per cent.* deposit paid by Wolcott on the sale of leasehold property by auction, the complainants having been the auctioneers, which was struck off to Wolcott as the highest bidder—he having, afterwards, refused to consummate the purchase by paying the residue of the purchase money and claimed a return of the ten per cent. The whole case turns upon the point, whether a binding contract was made between the parties?

The property was put up at auction; the terms of sale were announced; it was fairly struck down to Mr. Wolcott, the highest bidder; and, on his giving his name, the auctioneer entered it in the sales-book as the name of the purchaser, and he, thereupon, paid the ten *per cent.* required by the terms of sale.

Although there is some dispute about the fact of the terms of sale being entered in the sales-book of the auctioneer before the name of the purchaser was written there, yet I

think the evidence satisfactorily enough shows that the terms of sale were previously entered and were sufficiently full and explicit of the contract to render it binding upon the purchaser, on his name being placed there: inasmuch as the auctioneer thereby became his agent for that purpose on the property being struck down to his bid, and by his giving in his name as purchaser. I say this, however, with reference to the law as it stood anterior to the revised statutes; and as it had been declared by Chancellor Kent, in *Mc-Comb* v. *Wright*, 4 J. C. R. 659.

But the law, in this state, has undergone a change by the revision of 1830. It seems no longer to require any note or memorandum of the contract of sale to be signed or subscribed by the purchaser or vendee: *Baptist Church of Ithica* v. *Bigelow*, 16 Wend. 28; *Edwards* v. *The Farmers Fire Insurance and L. Co.*, 21 Ib. 493.

The language of the statute now is, that "every contract for the leasing for a longer period than one year, or for the sale of any lands or any interest in lands shall be void, unless the contract or some note or memorandum thereof, expressing the consideration, be in writing and be subscribed by the party by whom the lease or sale is to be made; and the subscribing may be by the agent of such party "lawfully authorized :" 2 R. S. 135, § 8, 9. Now, whether the legislature meant that a purchaser shall be bound, whether he subscribes a note or memorandum of the contract or does not, contrary to the intention and object of the revisors in proposing the section in the form in which it appears they originally proposed it; (*see their notes*) yet, one thing is very certain: that a contract for a sale of lands or an interest in lands beyond a lease for one year can be of no force or validity whatever, not even against the vendee or purchaser, although he may have reduced it to writing and signed or subscribed it with his own signature, unless the vendor or party making the sale also subscribed it, either by himself or his agent. The statute interposes and declares that without this, among other requisites, the contract shall be void, not merely voidable as to the party not signing or subscribing it, leaving it in force against the vendee or purchaser who has subscribed, but void *in toto* and not to be enforced at

Vol. IV.—14

all. The word "subscribed" here used is to be understood in a different sense from the word "signed" in the old statute (see *Davis* v. *Shields*, in Error, 26 Wend. 341.) In the case in hand there is no evidence, nor is it alleged or pretended that Pelletier or any one in her behalf signed or subscribed the contract of sale in question. Her name does not appear even in the auctioneer's memorandum of sale, nor was her name written or subscribed to the terms of sale by the auctioneer or any other agent. The requirement of the statute in this respect appears to have been entirely overlooked. The contract must be deemed void as the statute declares it to be. The subsequent execution and tender of the deed by the party does not remove the difficulty. This was not making the contract of sale or the agreement for the sale to be made as contemplated by the statute, but it was the intended fulfilment of the previously made supposed contract. If the deed had been accepted, then it would have been an executed contract and all well enough; but the purchaser had a right to repose, as he did, upon the statute and to repudiate the transaction.

I must decree the money to be returned to him, with his costs to be taxed and to be paid by Pelletier.(*a*)

(*a*) The following form of decree was approved of by the Vice-Chancellor and entered: *after referring to the report of the master to whom it had been referred to take proofs:* And this cause coming now on to be heard accordingly upon the said master's report and the pleadings in this cause; and Mr. Lockwood having been heard on the part of the defendant, Maria T. P. Pelletier, and Mr. Taylor on the part of the defendant, Noble K. Wolcott; and due deliberation being thereupon had: it is ordered adjudged and decreed that the clerk of this court pay to the said defendant, Noble K. Wolcott or his solicitor the residue of the said deposit money, upon receiving a receipt therefor to be signed by him or his said solicitor. And it is further ordered, adjudged and decreed that the said defendant, Maria T. P. Pelletier, be perpetually enjoined from any proceeding against the said complainants or against the said defendant, Noble K. Wolcott, for the said sum of money, being the ten *per cent.* on the alleged sale in the bill of complaint in this cause set forth and described. And it is further ordered, adjudged and decreed that the said defendant, Maria T. P. Pelletier, pay to the defendant, Noble K. Wolcott, or his solicitor the amount of the costs of the said defendant, Noble K. Wolcott, in this suit to be taxed. And it is further ordered, adjudged and decreed that the said defendant, Maria T. P. Pelletier, do pay to the said defendant, Noble K. Wolcott, or his solicitor the sum of $86.83, being the amount computed by the clerk of this court, to make good the deficiency of the said ten *per cent.*

deposit money paid into court, and that the said Noble K. Wolcott have execution for the said sum of $86.83, and for his said costs.

