THE TRUSTEES OF THE THIRD PRESBYTERIAN CONGREGA-
TION IN NEWARK v. CALEB H. ANDRUSS.

1. The right to a pew granted by a church corporation to a man and his heirs, is real property, an incorporeal easement, or usufructuary right in land of another.

2. A suit in which the right to such pew comes in question is within the provision of the first section of the small cause act as to title of real estate, and not cognizable before a justice.

3. In such suit plaintiff in Circuit entitled to full costs, though verdict for less than 100 dollars.

This action was brought in the Essex County Circuit against the defendant as the assignee of Hugh McDougall for certain arrears of rent and assessments on a pew in the house of worship of the plaintiffs. The declaration states, that on the first day of January, 1825, the plaintiffs were, and ever since have been seised in their demesne as of fee, and possessed of a certain church or house for public worship, situate in Newark; that said church was, during that time, divided into pews for the accommodation of persons attending public worship therein; that these pews were respectively appraised at certain values as a basis of assessment in raising funds for the expenses of said congregation; that by a certain deed of indenture made and dated January 1st, 1825, and made by and between the plaintiffs and the said Hugh McDougall, the plaintiffs in consideration of a certain sum of money therein mentioned, and also for the annuity sums of money, rents and assessments, reserved and to be assessed as thereinafter mentioned, and covenants to be kept and performed by the said Hugh, &c. granted, bargained and sold a certain pew in the middle aisle of said church, known and numbered as pew No. " 54," to the said Hugh McDougall, to have and to hold the same to the said Hugh, his heirs and assigns forever; subject, nevertheless to, and on condition of, the annual payment of two per cent. on 225 dollars, being the appraised value of said pew, in four equal quarter yearly payments, and to be subject to such further yearly annuity or sum of money as should be affixed and assessed upon them yearly in the month of January in every or any year by

VOL. I.                    X

the trustees, not exceeding five per cent. in the whole, and that in and by said deed, the said Hugh McDougall for himself, his heirs, executors, administrators and assigns, did covenant and grant to, and with the said trustees and their successors, that he, his heirs, executors, administrators and assigns should and would pay the said two per cent. and such further annuity as should be assessed as aforesaid on said pew by the trustees (with a profert of the deed.) The declaration further alleged, that McDougall entered into and took possession of the pew, ' and was thereof seised and possessed, &c. and that on the 1st day of January, 1830, during the continuance of the estate so granted and conveyed, all the estate, right, title, &c. of the said Hugh McDougall, of and in said pew, by grant, bargain, sale and assignment thereof, then and there duly made, legally came to and vested in the defendant, whereby the defendant entered, and became, and was thereof seised and possessed, and continued thereof so seised and possessed, up to the commencement of the suit, and during all that time used, occupied and enjoyed the said pew. The declaration then alleged annual assessments of 5 per cent. (including the said 2 per cent.) for the year 1840, . and the six next succeeding years thereafter in the mode prescribed by the deed, and that during that time the defendant was seised and possessed of the said pew, concluding with a breach that the defendant had neglected and refused to pay, &c.

To this declaration the defendant pleaded 1st, That the estate of the said Hugh McDougall of, in, and to the said pew, did not by grant, bargain, sale, or assignment, come to or vest in the defendant in manner and form, &c.

2d. That no such assessments were made in manner and form, &c.

3d. That the defendant had paid all the moneys mentioned in the declaration, &c.

And issue was joined on all the pleas.

The cause coming on to be tried before Mr. Justice NEVIUS at the May Term of the Court, 1847, the jury rendered a verdict against the defendant on all the issues, and found damages for the plaintiffs of $38.46, the amount of rent in arrear, being less than $100, and judgment was rendered accordingly.

A question then arose as to the costs. The defendant denied the plaintiff's right to recover the costs of the suit. The plaintiffs, on the other hand contended that a pew granted by the owners of the freehold seised in fee, to a man and his heirs is real estate, or a hereditament within the meaning of the act constituting courts for the trial of small causes, which withholds jurisdiction from those courts in "any action wherein the title to any lands, tenements, hereditaments, or other real estate shall, or may in anywise come in question;" and that the title to the aforesaid pew did come in question in this cause.

And hereupon the said justice before whom the cause was tried, being in doubt upon the said question of costs, certified the point for the consideration and advisement of the Supreme Court according to the statute.

Argued before the CHIEF JUSTICE, and WHITEHEAD and RANDOLPH, JJ.

*Bradley*, for plaintiffs.

*F. Chetwood*, for defendant.

GREEN, C. J. This action was commenced in the Circuit Court of the county of Essex, to recover certain arrears of rent and assessments on a pew in the Third Presbyterian Church of Newark. Upon the trial the plaintiffs recovered less than one hundred dollars. The only point submitted for the opinion of this court by the case certified, is, whether the plaintiff is entitled to costs.

The pew in question was by deed, dated the 1st day of January 1825, conveyed from the plaintiffs to one Hugh McDougall. Ths title of McDougall was subsequently vested by a regular chain of conveyance in the defendant. By the terms of the deed the pew is conveyed, subject to the annual payment of two per cent. upon the appraised value of the pew, and also to the payment of such sums as shall yearly be assessed and affixed upon the said pew, in the mode specified in the deed of conveyance. The obligation to pay the rent and the assess-

ments devolved upon the owner of the pew, and the declaration charged that the defendant, by virtue of his right and title to the pew, became liable to pay the arrears of rent and assessments sought to be recovered. In order to sustain this action, it became necessary for the plaintiffs upon the trial to shew that the title of the pew was in the defendant. The title to the pew came necessarily and directly in question. The only inquiry therefore, is, whether the title to the pew is " a title to any lands, tenements, hereditaments, or other real estate " within the meaning of the first section of the act constituting courts for the trial of small causes—if it be, the demand was not cognizable before a Justice of the Peace, and the plaintiffs are entitled to their costs.

The conveyance under which the defendant claims, vests the title in him, his heirs and assigns forever. He has as absolute and unqualified a property in the thing, as the nature of the subject admits of. Is the subject to be classed among *things real*, or *personal ?*

The precise nature of property in a pew seems not to be very definitely settled. *Blk.* 2 *Com.* 429, informs us that pews in a church are somewhat of the same nature as a monument, or tombstone, or a coat of armor, or ensign of honor hung in a church. That they are in the nature of heir looms, and may descend by custom immemorial from the ancestor to the heir.

This description can be applicable only to the tangible property, to the material of which the pew is constructed. It may be true as applied to a monument, a coat of armor, or a seat or pew placed in the aisle or chancel of a church. It has no applicability to the right of burial in a particular part of the churchyard, or to the right of occupying a particular pew in a church. Accordingly, we find that an action for removing a coat of armor, for breaking or defacing a monument, or for injuring or destroying a pew, can be maintained only by the party by whom the monument was erected, or the pew constructed, or by his heirs. *Cowen's Case,* 12 *Co.* 105 ; *Dawtrie* v. *Dee,* 2 *Roll's Rep.* 140 ; *Palm.* 48 ; *Spooner* v. *Brewster,* 3 *Bing.* 136.

But the exclusive right of occupying a particular seat or pew in a church, is an incorporeal heriditament. It is in the nature

of an easement, a right or privilege in the lands of another. For an interruption of this right, an action on the case for a disturbance, as in other cases of injury to incorporeal hereditaments, is the only remedy. 1 *Chit. Pl.* 162; *Com. Dig.* "*Action on the case for disturbance,*" A. 3; 2 *Saund.* 175 c.

And it seems that in England the right to a pew is never a mere personal right. It can exist only as appurtenant to a house in the parish. Unless the right be claimed as appurtenant to a house, and it be so averred in the declaration, no action at common law will lie. The remedy in such case is of a spiritual nature, and must lie in the ecclesiastical court. *Corven's case,* 12 *Coke* 104; *Maaiwaring* v. *Giles,* 5 *Barn. & Ald.* 356; 1 *Chit. Pl.* 163, 415; 2 *Chit. Pl.* 817; 1 *Phil. Ec. R.* 316.

The reason assigned is, that the freehold of the church and of the churchyard is in the parson, for the common benefit of all the inhabitants of the parish. The body of the church is common to all the inhabitants, and every parishioner who is entitled to christian burial in the church yard. It is not in the power of the parson to grant an exclusive right to the occupancy of a pew, or to a particular place of burial. *Corven's case,* 12 *Coke* 104; *Com. Dig. Cemetery B.; 8 Barn. & Cress* 288. (a)

---

(a) In England, before the Reformation, no separate seats were allowed in the church except perhaps in a few cases to some very great persons; but the body of the church was common to all the parishioners. After the Reformation the ordinary or bishop having the regulation or ordering of the body of the church, granted the right to particular seats to individual parishioners. This grant, called *a faculty,* was personal and revocable, and all disputes concerning it were determined in the spiritual courts. 1 *Burns' Ec. L. tit. Church,* c. 7. Church seat. *Crabbe's Real Property,* § iv. Pl. 90, and § x, Pl. 481–2. But when this right had been enjoyed immemorially by the occupants of a certain house who had immemorially repaired the seat, it was held by the common law courts to have ripened into a *right of property* which they would notice, and they by prohibition prevented the ordinary and ecclesiastical courts from disturbing the owner or occupants. Hence it was requisite, in prescribing for a pew, to prescribe for it as belonging to the inhabitants of a certain *house,* from which it could not be severed, and not to an *individual* or to *land;* and to prescribe for it by reason of *the repairs.* *Woolcombe* v. *Ouldridge,* 3 *Add.* 6. Seemingly at law a consideration which rendered the faculty or license of the ordinary irrevocable. 1 *Burns' Ecc. L.*

In this state, and it is presumed generally in this country, a different principle prevails. The freehold of the church, and of the burying ground, is in the corporation, or in the trustees, for the use of the congregation. The practice has long prevailed (originating either in a vote of the corporation, or in a resolution of the trustees, with the assent of the parishioners), of leasing or selling to individuals an exclusive right to a particular pew, and to a particular spot of ground for the purpose of burial. The right thus acquired is a legal right, and for the infringement of which an action at common law may be maintained. But when the conveyance is absolute, as in the present instance, to a man and his heirs, is his right to the pew a mere chattel interest? Obviously we think it is not. It has none of the characteristics of a chattel.

True, the owner of a pew has not an absolute and unlimited interest in the property. He owns neither the soil beneath, nor the space above it. He has no such ownership of the pew itself, as to authorize his altering or converting it to any other use. His interest is both qualified and limited. The absolute ownership is in the corporation, or in the trustees in whom the title is vested. They may encumber the legal title—may alter the pews—may raze and rebuild the edifice without the consent of the pew-holder, and without an invasion of his right.

The title of the pew-holder is usufructuary. He has strictly no title to the pew itself. He cannot treat it as his own property. He can use it only for the purposes to which it has been dedicated, and in the mode prescribed or agreed upon at the time of the purchase. It is in reality a mere easement—a privilege or use in the freehold of another. Still, it is an hereditament, although incorporeal, and as such, when vested, as in the present instance, in the owner, and in his heirs, it is real estate, not personal. But whether it be regarded as a mere easement,

---

*ubi. sup. : Burton on Real Prop. Pl.* 1172; 1 *Crabbe on Real Prop.* § *iv. Pl.* 90; § *x, Pl.* 480 *to* 493; *Stocks* v. *Booth,* 1 *T. R.* 428, & *Rogers* v. *Brooks, Ib.* 431, *in note ; Griffith* v. *Matthews,* 5 *T. R.* 296. By the Prescription Act 2 & 3 *W. iv, c.* 71. 20 years' enjoyment of pew is proof of Prescriptive Title.

or as a corporeal hereditament, for which trespass or ejectment will lie; still it is technically a thing real.

This is the dictate of sound principle, and seems the result of the adjudged cases (when not controlled by statutory regulations) both in England and America. *Bates* v. *Sparrell*, 10 *Mass.* 325; *Gay* v. *Baker*, 17 *Ibid.* 435; *Kemball* v. *Rowley*, 24 *Pick.* 347; *Freligh* v. *Platt*, 5 *Cowen* 494; *Price* v. *The Methodist Church*, 4 *Ohio* 530.

I am aware that some inconvenience may be apprehended from holding the ownership of pews and of places of burial as real estate. Considerations of supposed expediency or real policy have led to various statutory enactments in different states, regulating the character of the property in pews. In Massachusetts, by statute, pews are real estate throughout the commonwealth, except in Boston, where they are personal property. In Connecticut they are declared by statute to be personal—in New Hampshire to be real estate.

The question before this court is not a question of policy, or of expediency, but of legal principles, and in this view I entertain no doubt that the title to a pew is a title to real estate within the provision of the first section of the act, constituting courts for the trial of small causes.

Let it be certified to the Circuit Court of the county of Essex, as the opinion of this court, that the plaintiff is entitled to costs.

RANDOLPH, J. The plaintiff is entitled to judgment in this case; but whether he may recover costs, depends on the question whether a pew in a church for which a party holds a title, be real or personal estate, I have no hesitation whatever in saying that it belongs to the former. It is an incorporeal hereditament of the nature of an easement; and although it does not partake of all the properties of real estate, or entitle its owner to all the rights of a freeholder, or subject him to all the liabilities of such citizen, yet it comes under the denomination of real estate, and its title cannot be investigated in a justice's court, and the property in it would go to the heir, unless there be special provision to the contrary. See 10 *Mass.* 323; 1 *T.*

*Coke* 207 & (*L*) ; *Burton on Real Property* § 1172 ; 5 *Cowen* 496 ; 16 *Wend.* 32 ; 3 *Hill* 26 ; 2 *Starkie's Ev.* 628.

Let judgment be for the plaintiff with costs. (*b*)

WHITEHEAD, J. concurred.

---

(*b*) The American courts and elementary writers seem to have adopted on common law principles the doctrines held in this case as law in those States where property in pews has not been regulated by statute. They uniformly hold that the right usually granted by church corporations to a pew in a church is *real property ;* that it is *incorporeal*—an easement only—that it is subject to many restrictions and liable to be taken away at any needful taking down of the church edifice. That it belongs to the *person*, descends to the heirs at law, and is transferable like other real estate. See authorities collected in 3 *Kent's Com.* 402 (4*th Ed.*) ; 1 *Hilliard Real Prop. c.* 1, ⸹ 13.

CITED *in Lynd* v. *Menzies*, 4 *Vr.* 162.