*586
By the Court:

Monell, J.
The only written evidence of a contract in this ease is contained in the several telegrams which passed between Smith and the defendant. Those telegrams were signed by Smith only. He was confessedly the defendant’s agent; and, unless in his character of broker he was also the agent of the plaintiff, the case, would fail under the authority of Justice v. Lang (2 Robt., 333).
The léarned justice held, at the trial, that Smith was the agent of both parties, which, if correct, would make his signing a signing by both parties, and not within the statute.
The contract, as proved by parol, was to purchase three several contracts, made by Wightman & Anderson, to deliver to Graham Brothers five hundred barrels of petroleum in each of the months of October, November, and December, 1867, at thirty-one and a half cents, deliverable at the buyer’s option. The purchase of the contracts was made by Smith of Crouch, and not directly of the plaintiff. Grouch was the agent of the plaintiff. The answer alleged that'the contract was made by the plaintiff through his agent Crouch. Smith testified that he “ bought the contracts of Crouch, the agent .of .Dilworth.” He said Grouch, the plaintiff’s agent, offered him the oil, and that he bought them for Bostwiclc He said he knew that Crouch was the plaintiff’s agent and representative in Philadelphia. Throughout Smith’s evidence, he stated clearly and distinctly that Crouch was the plaintiff’s agent, aiid acted in that .capacity for him in the agreement for the sale and delivery of the petroleum contracts, and that Groueh came to him as DilwortWs' agent, and offered to sell to him the oil contraéis. Crouch also testified that he was the plaintiff’s agent, and as such agent made the sale of the contracts. He said he did not disclose the name of his principal until after the contract had been made.
But in the course of Smith’s examination he was asked who paid his brokerage, or was to pay it, and he answered, Hr. Dilworth was to pay the brokerage, but he did not get any. On *587 the same subject, the following testimony was given by the same witness:
Q. Then you were acting for him as well as for Mr. Bostwiek ?
A. Tes, sir; Mr. Crouch offered me the oil.
Q. Is not it a custom for a seller of the oil to pay the bro kerage ?
A. Yes, sir, always. Mr. Dilworth, being the seller, was to pay the brokerage.
Q. You do the business of a broker?
A. Yes, sir.
Q. You say the seller pays the brokerage ?
A. Yes, sir, the seller pays the brokerage always.
Q. Mr. Dilworth, being the seller, was to pay you the brokerage here ?
A. Yes, sir. I received no authority from Mr. Dilworth in this matter at all. I had no communication with him.
Upon this evidence, and the general evidence that Smith was a broker, the learned justice held that his signing was the signing of both parties.
The rule that a broker is to be considered the agent of both parties, rests upon a mere presumption of fact, which may be rebutted by the particular circumstances of the case. He is not ex vi termini "agent for both (Dunlap’s Paley Ag., 315 ; 2 Parson’s Con., 292 ; Bartlett v. Burnell, 4 Ad. and Ell., 792). It may, therefore, very properly be questioned whether the presumption of agency was not fully rebutted in this case.
The plaintiff had another agent who was transacting the business, and with whom alone Smith negotiated, knowing him, as he says, to be Dilworth’s agent. Smith says expressly that he received no authority from Dilworth at all, and had no communication with him. Smith’s agency, therefore, must stand upon a mere custom, testified to by him, for the seller of oil to pay the brokerage, arid that Dilworth, being the seller, was to pay him the brokerage, not under any agreement with him, but by reason of a custom to that effect.
Where a person intervenes between the seller and the buyer, *588 and acts for both, then it may be said he is the agent of both. He is the broker to purchase and the broker to sell, and, his acts are binding upon both. That, however, is not this case. Dilworth had a broker of his own, authorized to negotiate and contract for him, but such broker had no power to appoint, either expressly or impliedly, a sub-agent who could bind his principal.
The presumption of agency, therefore, seems to me to be completely rebutted. Crouch, acting as the plaintiff's broh-er,' offered to sell the six contracts to Smith, and Smith agreed to purchase them. Smith was the defendant’s broker, and had all the authority necessary to act on his behalf. But he did not become the agent of the plaintiff by merely agreeing to purchase from his agent, knowing that he was dealing with the agent and not with the principal. To adopt the rule laid down in this pase would place any seller of property in the power of the person employed to make the purchase, to make for the seller just such a,contract as he saw proper to make; and having put it in writing, it could not be contradicted by parol. Smith, therefore, not being the agent of the plaintiff, and there having been no signing of the contract by the plaintiff, the contract was, within the 'statute, null and void.
There is, however, a further reason which is conclusive against the counterclaim in this case. The rule is well established that, the note or memorandum must contain every thing necessary to show the contract between the parties, so' that there may be no need of parol proof to explain the intention of the parties, or the terms of the agreement (Boydell v. Drummond, 11 East., 142; Dodge v. Lean, 13 John. B., 508; Abell v. Radcliff, id., 296; Baily v. Ogden, 3 John. R., 419; Merritt v. Clason, 12 id., 102; Trustees First Bap. Ch. v. Bigelow, 16 Wend., 28; Calkin v. Falke, 38 How. Pr. R., 62). For the purpose of making out the contract, the three telegrams may be read together, although the last contains the only note of any contract. Do these telegrams show precisely, and without the supplement of additional facts (not mere explanations), what the contract was? I am *589 unable, upon reading them, to make out any contract whatever, the terms of which I can understand.
■ It does not state who are the contracting parties, buyer and seller (Champion v. Plumner, 5 Esp., 240). If any thing, it was a contract with Wightman & Anderson.
The subject-matter of the contract is nowhere mentioned or described. Any commodity whatever might have been the subject; and it is impossible to determine from it whether it was oil or oil contracts or any other merchandise or thing.
If it were proper to explain or supply by parol that the purchase was of oil contracts, then how many of such contracts described as “ old contracts ” was agreed to be sold ? The second telegram does not aid the defect: “ buy five hundred each,” is descriptive of nothing, and by itself wholly unintelligible.
In short, the memorandum relied on does not contain enough of the contract to enable the court to see what were the terms of the agreement; and resort to parol proof was, therefore, neces-' sary, not to explain technical or equivocal terms on the face of the instrument (Salmon Falls Mfg. Co. v. Goddard, 14 How. R., 446), but'to supply the omissions and defects in it. That seems to have been thought necessary at the trial, as the defendant, instead of relying upon the written memorandum, proved the whole of the contract by parol, and such parol contract was the only basis for any recovery in the case. Even, therefore, if the signing was within the statute, the memorandum signed did not contain the terms of a contract which was capable of being enforced.
The motion to overrule the counterclaim ought to have been granted.
As the rulings of the learned justice on these branches of the case were in our opinion erroneous, it is not necessary to express any opinion upon the rule of damages adopted at the trial.
The judgment must be reversed and a new trial ordered, with costs to the appellant to abide the event.