ORRIN L. BARTON, PLAINTIFF IN ERROR, V. J. N. H. PATRICK, DEFENDANT IN ERROR.

Statute of Frauds: CONTRACT NOT IN WRITING. B. and P. having been in negotiation for the purchase by B. of 2,000 acres of land off the east end of a large tract owned by P., B. wrote to P. as follows: "On the enclosed map you will observe that taking to the dotted lines are about 2,018 acres. Will you include this full amount in the sale? I think it would be better. If you cut off just 2,000 acres a good portion must be described by metes and bounds, which would be inconvenient, at least." P. replied: "The land marked out by you contains 2,088.97 acres instead of 2,018 acres as figured by you. This is more than I want to sell. Take out one of the plats marked in similar ink to this, and then B. will have to pay $5.00 per acre for all extra land. Taking out the tract marked (1) will leave 2,002.77 acres, the price for which will be $10,013.85. Doing the same with tract (2) will leave 2,007.69 acres, for which the price will be $10,033.45." In an action by B. against P. for refusing to con-

vey the 2,018 acres according to the dotted lines on the map, for $10,090.00, *Held*, That if there was a contract between the parties for the sale of that specific property, the same was void under the statute of frauds for the want of a contract or some note or memorandum thereof in writing.

ERROR to the district court for Douglas county. Tried below before WAKELEY, J.

*John L. Webster* and *George W. Doane*, for plaintiff in error.

*John M. Thurston* and *Robert W. Patrick*, for defendant in error.

COBB, J.

The cause of action is set out in the plaintiff's petition as follows: ".That on the 20th day of August, 1883, the defendant, being owner of the lands hereinbefore described, did on said day, by Robert W. Patrick, his attorney in fact, enter into an agreement with the plaintiff partially oral and partially in writing, to-wit, in letters and telegrams, whereby the defendant agreed to sell to the plaintiff (here follows the description of a large number of tracts of land) in Nance county, Nebraska, for the sum of $10,090, which said sum was to be deposited by the plaintiff in the Platte Valley Bank and to be delivered by said bank to the said defendant upon delivery by said defendant to the plaintiff of a warranty deed to said lands; that the plaintiff did deposit in said bank, for the use of the defendant, said sum of money in payment for said lands, and complied with all things on the plaintiff's part to be performed, and demanded the delivery of the deed, and that at said time said lands were worth the sum of $25,000.

"Therefore plaintiff prays judgment for $25,000, his damages.

"The defendant filed an answer, and therein denies that

on the 20th day of August, 1883, or at any other time, he entered into any agreement to sell and convey to the said plaintiff the said lands, and denies that the plaintiff deposited in the Platte Valley Bank the $10,090, and denies that the plaintiff has complied with the terms of the contract, and denies that the plaintiff demanded the delivery of the deed, but avers that he offered to convey the lands for the sum of $10,090, which offer the plaintiff refused to accept; denies that said lands were worth the sum of $25,-000, and avers that said contract was never reduced to writing and signed by the defendant or his agent, nor was any note or memorandum thereof in writing ever made and signed by the defendant, nor did the plaintiff pay any part of the purchase price, and that the same is void by reason of the statute of frauds, and denies each and every of the allegations in said petition contained.

"And thereupon the plaintiff filed a reply, denying that the plaintiff failed to deposit the money in the Platte Valley Bank, and averring that the money was so deposited, and denies that defendant offered to convey the lands, and denies that said contract was not reduced to writing and signed by the agent of defendant, and avers that said contract was reduced to writing by letters and telegrams, and so signed by Robert W. Patrick, defendant's attorney in fact, for the defendant, and that the purchase price was paid in manner and form as in the petition averred, and that said contract was not void by reason of the statute of frauds. That afterwards, on the 18th day of June, 1885, a trial was had to a jury, and on the 22d day of June, 1885, the plaintiff having closed his testimony, the defendant moved for a non-suit, which motion was sustained and the jury discharged and judgment rendered for the defendant, and to which the plaintiff excepted."

The cause was then brought to this court on error by the plaintiff, who assigns the following errors:

"*First.* That the said court erred in sustaining the motion of the defendant Patrick for a non-suit.

"*Second.* That said court erred in overruling the motion of the plaintiff Barton for a new trial."

Counsel for plaintiff in error, in the brief, admit that the letters and telegrams in evidence fail to express that part of the contract which provided the time, place, and manner of payment. But this they claim was supplied by a subsequent parol contract made between the plaintiff and defendant's agent at Central City, and they cite section 24 of chapter 32, Comp. Stats., together with numerous cases and text-books to the proposition that under the statute known as the statute of frauds, all that part of a contract falling within its provisions which relates to the manner and time of the payment of the consideration need not be in writing; that "this part of the contract, therefore, not being within the statute of frauds must be treated and considered like any other contract in writing not within the statute of frauds, and is therefore subject to be modified by a subsequent parol agreement if based upon any sufficient consideration. All there is in the oral agreement is the *mutual promise,* and the *time and place of performance* should be changed."

The cases cited are most of them where a contract in writing, perfect in all its parts, had been changed as to the time or manner of its performance by a subsequent parol agreement; but I find in none of them a discussion of the section of statute cited. I think these authorities fairly sustain the proposition that a written contract within or without the statute of frauds may be waived as to the time, place, or manner of performance by a subsequent parol contract. I am willing to concede, for it seems to be the language of the section cited, that the consideration of a contract required to be in writing may be proved by parol.

But the point of difficulty in the case, as appears to me, is that the contract, as proved either by the letters and telegrams offered in evidence, or by the parol evidence, or both

42

taken together, does not show or define the precise subject of the contract. I copy the letters and telegrams bearing ·on this point from the abstract:

"JULY 31, 1883.

"ROBT. W. PATRICK, Neb. Nat. Bank Building,

"Omaha, Neb. :

" Can sell for $4 for first and $5 for second thousand, line to run north and south, $9,000 cash. Answer by telegraph at once as party leaves to-morrow.

" REINOEHL,

"SHERWOOD & REINOEHL."

"OMAHA, August 1, 1883.

"SHERWOOD & REINOEHL:

" Hold offer open until Tuesday.

"PATRICK & Co."

"CENTRAL CITY, NEB., August 1, 1883.

"R. W. PATRICK:

"DEAR SIR—Your telegram was received during Mr. Sherwood's absence. I immediately went to see our purchaser, and he informed me that he could not possibly defer final action in the matter to so late a date as indicated in yours. To close the bargain at once he will offer an additional $500 to the amount already offered, making $9,500 for the east 2,000 acres ; this, however, must be accepted to-morrow.

" If you can accept this proposition let me know by to-morrow's mail which reaches here at 4:32 and leaves your city about.noon, or if you see fit, you can send me telegram.

"Of course you will understand that the tract for which htis offer is made includes about all the broken and sandy land in the *entire* tract.

" Answer as requested, and if you accept the offer purchaser will close the transaction within fifteen days.

"Respectfully yours,

" A. L. REINOEHL."

"OMAHA, August 2, 1883.
"A. L. REIN )EHL:
" Cannot accept less than ten thousand.
"R. W. PATRICK."

"AUGUST 2, 1883.
"R. W. PATRICK:

DEAR SIR—Have sold the tract to O. L. Barton for .$10,000. Will write you further and give description of land to-morrow.

" I will take some time to make an accurate description as there are so many fractions. I am going to land office to-night to get official figures. The tract sold 'is two thousand acres off the east end.
"REINOEHL & SHERWOOD."

"AUGUST 3, 1883.
"REINOEHL & SHERWOOD, Central City, Neb.:

" GENTLEMEN—Yours of the 2d received and contents noted. As you are probably aware, full payment of the land in question has not been made. Let Barton deposit the money at the Nebraska National Bank subject to my order upon presentation of deed and certificates of full payment, in evidence of good faith, and I will at once go to Grand Island, make full payment, and deliver him a good warranty deed for the two thousand acres. Or, if he prefers, I will deposit the deed when he deposits the money and then make the payments.

" I shall be in Grand Island on or about Thursday of next week, if not earlier.
" Yours,
"ROBERT W. PATRICK."

"CENTRAL CITY, August 3, 1883.
"R. W. PATRICK:

DEAR SIR—On the enclosed map you will observe that taking to the dotted lines are about 2,018 acres. Will you

include this full amount in the sale? I think it would be better.

"If you cut off just 2,000 acres a good portion must be described by metes and bounds, which would be inconvenient, to say the least. Let me hear from you by return mail about this, and please return the map. These the number of acres given on the affixed map at Grand Island land office.

"Yours,

"A. L. REINOEHL."

"AUGUST 4, 1883.

"Mr. A. L. REINOEHL, Central City, Neb.:

"DEAR SIR—Yours of the 3d at hand. The land marked out by you contains 2,088.97 acres instead of 2,018 acres as figured by you.

"This is more than I want to sell. Take out one of the plats marked in similar ink to this and then Barton will have to pay $5 per acre for all extra land. Taking out the tract marked (1) will leave 2,002.77 acres, the price for which will be $10,013.85. Doing the same with tract marked (2) will leave 2,007.69 acres, for which the price will be $10,033.45. Or, if neither plan will suit him, make any arrangement with him so as to give him as nearly as possible 2,000 acres off the east end, line of division to run north and south, price $5 per acre.

"Of course an acre or two more or less will not matter, but 80 acres makes a difference.

"Yours, &c.,

"ROBERT W. PATRICK."

"It is agreed by counsel that the two tracts marked one and two (1 and 2) by pencil on the map are the pieces referred to in the letter, and that the figures of Reinoehl in the letter of August 3d, showing the same to contain 2,018 acres, were correct, and that Patrick was mistaken in his computation in 'Exhibit J.'

" AUGUST 9, 1886.
" Mr. A. L. REINOEHL, Central City, Neb. :

DEAR SIR—Having received no reply to mine of the third, I have not deemed it best to go to Grand Island. If Barton will comply with the terms proposed please telegraph me at once and I will come up.

"Yours,

"ROBERT W. PATRICK,"


" CENTRAL CITY, NEB., August 10, 1883.
" R. W. PATRICK, Omaha, Neb. :

" Barton is raising money ; can we have five days ? Sale is sure. Answer at once.

"REINOEHL & SHERWOOD."


"OMAHA, NEB., August 10, 1883.
" To A. REINOEHL, Central City, Neb. :

" You can have seven days. Will come next week Grand Island.

" R. W. PATRICK."


CENTRAL CITY, NEB., August 16, 1883.
" R. W. PATRICK, Omaha, Neb. :

"All ready. Come to-morrow. Answer.

"A. L. REINOEHL."


" COLUMBUS, NEB., August 17, 1883.
" To A. L. REINOEHL, Central City, Neb. :

" Can you meet me in Grand Island this evening or to-morrow morning? Answer quick. Columbus.

" R. W. PATRICK."


" CENRTAL CITY., August 17, 1883.
" R. W. PATRICK, Columbus, Neb. :

" Can go to Grand Island on number three this P. M.
." A. L. REINOEHL."

" COLUMBUS, NEB., August 17, 1883.
" To A. L. REINOEHL, Central City, Neb. :

" Meet at number three.    Barton must close sale to-day.

" R. W. PATRICK."

There is parol evidence that Sherwood and Reinoehl met Patrick on the train, the latter being on his way to Grand Island, the day of the date of the last above telegram, and told him they were ready to close the trade.    Also that on the next day Patrick came to Central City and entered into an arrangement with Barton by which he was to deposit the money for said land in a bank there, so as to give him (Patrick) credit at a bank in Omaha for money with which to make certain payments to the government for said land.    But there is no evidence of any further reference between the parties, either in writing or by parol, to the point as to the exact line which was to separate the land sold from that to be retained by the vendor.

The section of our statute, Comp. Stat., Ch. 32, usually called the Statute of Frauds, which the defendant invokes by his answer, reads as follows:

"Sec. 5.    Every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void unless the contract or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made."

In Parsons on Contracts, Vol. 1, p. 8, cited by counsel for defendant, the essentials of a legal contract are stated to be: First, the parties; Second, the consideration; Thirdly, the assent of the parties; and, Fourthly, the subject matter of the contract, or what the parties to it propose as its effect.

My present purpose does not involve an examination of either the first or second of the above essentials to a legal contract, as stated by the author cited.    The third and fourth I will consider in their inverse order.

" It must, of course, appear from the memorandum what is the subject matter of the defendant's engagement. Land, for instance, which is purported to be bargained for, must be so described that it may be identified." Brown on Stat. Frauds, § 385.

In the case of *Williams v. Morris*, 95 U. S., 444, Mr. Justice Clifford, in the opinion of the court, said, " Decided cases everywhere require that the memorandum should mention the price. Nothing is contained in either receipt to fulfil that requirement, nor do the receipts contain anything of an unambiguous character to enable the court to determine what real estate is the subject of the purchase. Part of the property lying west of the tenement, the evidence shows never was occupied by the respondent; and the second receipt in its terms limits the purchase to the tenement, which the respondent occupied and repaired. None of the terms, says Mr. Phillips, can be left to be supplied by parol," etc., citing *Baptist Church v. Bigelow*, 16 Wend., 28, and *Morton v. Dean*, 13 Metc. (Mass.), 385.

In the case of *Holmes v. Evans*, 48 Miss., 247, which was an action for the specific performance of a contract for the sale of real estate, it was held (I quote from the syllabus) that " a receipt duly signed for $100 as part payment on a piece of property on the corner of Main and Pearl streets, city of Natchez, county of Adams, state of Mississippi, is defective as a contract under the statute of frauds, being void for uncertainty and a bill in equity to enforce specific performance of the agreement to which it was claimed to refer, was properly dimissed."

The authorities holding with the above are very numerous, and with but little conflict. Some of them, it is true, hold that certain ambiguities in the description of the subject may be supplied by parol; and all of them, I think, in which the point arises, that it may be supplied by reference to other writings, answering certain conditions. But in the case at bar the difficulty is not sought to be met in

either of these ways. The first reference to the matter of the description of the land, the subject of the sale between the parties, occurs in plaintiff's exhibit "F," in which Reinoehl and Sherwood, the agents, write to the agent of the defendant that "It will take some time to make an accurate description as there are so many fractions. That they were going to the land office to get official figures, and that the tract sold is two thousand acres off the east end." In the next letter, from one of the agents to Patrick, exhibit "H," he suggests that it would be better to sell the land according to a certain map with dotted lines, which would make the subject of the purchase 2,018 acres instead of 2,000 as originally contemplated. To this letter Patrick replied (exhibit "I"), stating that the land marked on the map amounted to 2,088.97 acres instead of 2,018, and declining to sell that much land. Then follows, "Take out one of the plats marked in similar ink to this, and then Barton will have to pay $5 per acre for all extra land. Taking out the tract marked (1) will leave 2,002.77 acres the price for which will be $10,013.85. Doing the same with the tract marked (2) will leave 2,007.69 acres, for which the price will be $10,033.45. Or if neither plan will suit him, make any arrangement with him so as to give him as nearly as possible 2,000 acres off the east line of division to run north and south, price $5 per acre."

This is all that is shown by the record as to the description of the land sold, except the following from the abstract:

"It is agreed by counsel that the two tracts marked one and two (1 & 2) by pencil on the map are the pieces referred to in the letter, and that the figures of Reinoehl in the letter of August 3, showing same to contain 2,018 acres, were correct, and that Patrick was mistaken in his computation in exhibit 'J'"; also the following, from the testimony on the stand of Mr. Reinoehl: "The map, when returned to the witness, was shown to the plaintiff as exhibiting the land which he was to take."

The above evidence, to my mind, shows this state of facts: The agent of the plaintiff having been in negotiation with the agent of the defendant for the purchase of 2,000 acres of land off of the east end of a larger tract, submits a proposition to him to include an additional quantity of land in the sale, exhibiting to him a map, in which the new line is represented by dots. This proposition the defendant's agent, by reason of an error in his calculation of the contents of the additional tract, conceiving that it covered more land than he or his principal desired to sell, declined. The agent of the plaintiff, receiving the letter containing this declination, seems to have known that it was made through a mistake of fact, or an error of arithmetic, and so they treat it as an acceptance of the amended proposition. And, as I understand the case, the action is brought for damages for the refusal or failure of the defendant to convey the land as shown by the dotted lines on the map. It cannot be seriously insisted, it seems to me, that this record shows any promise, either in writing or by parol, for that matter, to convey *that land.* The greatest quantity of land which the defendant ever offered to sell, so far as appears, was 2,007.69 acres for the price of $10,-033.45. And the suit is brought for refusing to convey 2,018 acres for the price of $10,090.

I therefore come to the conclusion that there was not shown any contract in writing, nor any note or memorandum in writing of the agreement set out in the petition, so as to take the case out of the operation of the statute of frauds. Nor, independent of the statutes, was there evidence of even a parol agreement to convey the precise property described in the petition.

As to the third point, as laid down by Parsons, as we have seen in his enumeration of the essentials of a legal contract, the assent of the parties, it is probably unnecessary to say anything in this opinion. Yet it seems to me very plain that the letter of Robert W. Patrick, of Au-

gust 4 (exhibit " J"), contained two distinct propositions, either one of which was susceptible of being assented to by the plaintiff, and that thereupon the proposition so assented to would have become a binding contract; the said letter, taken in connection with the letters and telegrams which went before, and the map therein referred to, constitute a note or memorandum thereof in writing answering all the requirements of the statute of frauds. These were the propositions to sell the lands as shown by the plat, taking out the tract marked (1), leaving 2,002.77 acres for $10,013.85 or the same lands, taking out the tract marked (2), which would leave 2,007.69 for $10,033.45. It does not appear that the plaintiff assented to either of these propositions, but claims to have assented to one which, as we have seen, was never made, to-wit, the sale of 2,018 acres of land at the price of $10,090.

If I am correct in the above views, it then follows that the order and judgment of the district court in taking the case from the jury and rendering judgment for the defendant was correct, without reference to the matters urged by counsel for defendant in the second and third points of his brief. They will therefore not be examined. The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

The other judges concur.