[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 586 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 587 
The question in this case is whether the evidence of the contract of sale is sufficient to satisfy the terms of the statute of frauds, relative to the sale of lands. The statute declares void every contract for the sale of lands, unless it, or some note or memorandum of it expressing the consideration, be in writing and be subscribed by the party by whom the lease or sale is to be made, or by his agent lawfully authorized. (2 R.S.,
135, §§ 8, 9.) The memorandum of the contract in this case was held to be defective upon two grounds: First. That it did not contain the terms and conditions of the sale; and, Second. That there was not a sufficient designation of the lands sold. The validity of the first of these grounds, in its application to this case, depends upon the correctness of the decision that the letter of Tallman to Bleecker, the auctioneer, was not to be deemed a part of the signed memorandum. The letter in question was dated May seventeenth, was headed "Terms of sale," was addressed to the auctioneer, and commences with the declaration that "The following are the *Page 588 
terms of sale of the 324 Harlem lots to be sold by you for me to-morrow." It was signed by Tallman, the person by whose order the sale was to be made, and it contains terms of sale sufficiently specific for all legal purposes, and provides for a resale of the property in case of failure on the part of the purchaser to comply with the terms.
This letter was, before the commencement of the resale on the twenty-fifth day of May, pinned to the page in the auctioneer's book, upon which the entries of the sales made on that day were made. It was produced at the trial so pinned to the page, and for aught that appeared had continued so annexed from the morning of the sale. The page of the auctioneer's book shows by the entries upon it that it is a memorandum of an auction sale of Harlem building lots which had been sold on the eighteenth, and which on the twenty-fifth were resold at the risk of the purchasers, who had failed to comply with the terms of the previous sale, and that the sale was made by Bleecker as auctioneer, by order of Tallman. Upon the page a column headed terms of sale was blank. If the letter in question had been copied upon this page under the heading, terms of sale, there could have been no difficulty in collecting from its expressions the terms of sale by legal construction; nor could any difficulty have arisen if the letter had been made fast to the page by gum or wax or wafer, although in each of these cases the papers could have been separated with more or less of ease. I do not see that papers fastened together by a pin are in any different position in legal effect. That sort of annexation is not so difficult to destroy as some others, but the greater or less difficulty of separation is not the question. The point is whether the two papers were signed as one by the signature of the auctioneer. As they were pinned together; as together they contain the terms necessary to a complete contract, as they plainly relate to the same subject, they ought to be construed together as forming one agreement unless some rule of law forbids it. *Page 589 
The cases of Hindee v. Whitehouse (7 East, 558), and TheFirst Baptist Church v. Bigelow (16 Wend., 28), were cases in which the papers sought to be connected were not in any way physically joined together, nor did the paper actually signed refer at all to the other which was sought to be connected with it by parol evidence. I am not aware of any cases which have gone further than these, and denied the right of a court to look at papers fastened together in any way for the purpose of seeing whether they together contain the terms of a contract. In this case, the blank column headed "terms of sale," is a sufficient reference to the paper pinned to the page containing the terms of sale, and upon the inspection of both papers they appear together to contain a sufficient contract, so far as this point is concerned.
The other ground of the decision under review was that the lots sold were not sufficiently designated. They appear to have been designated as building lots on 132d and 133d streets between 5th and 6th avenues, numbered 132, 133, 134, 135, 154, 155, 156, 157. In point of fact the four first lots were on 132d-street and the other four on 133d-street. It appears from the memorandum that all the lots to be sold, were Harlem lots, which had been on the 18th sold by Talman's order. The case of Parkhurst v. VanCortland, (1 John. Ch. R., 273; S.C., 14 John., 15), undoubtedly affirms that the memorandum of a contract to satisfy the statute must contain its terms with reasonable certainty, so that the substance of it can be made to appear and be understood from the writing itself without having recourse to parol proof, but the case is not to be understood as requiring any other rule in respect to the competency of parol evidence to be applied to contracts within the statute, than is applicable to written agreements in general. If a deed purports to convey the house and lot on which A. now lives, is is clearly competent to show by parol, what property that description fitted, at the time the language was used. To this extent parol evidence may certainly be resorted to. The decision *Page 590 
proceeded upon the ground that no parol evidence was proper, we may, therefore, for the sake of illustration, assume that the plaintiff might have shown such facts as, though perhaps not strictly proved in the case as now presented, are fairly to be collected from the papers and proofs in evidence. The resale was of certain Harlem lots which had been before sold on the 18th for the same person by the same auctioneer; at that sale nos. 132, 133, 134, 135, on 132d-street between the 5th and 6th avenues had been sold, and lots corresponding to those numbers existed in that street between those avenues but no such lots so numbered existed in 133d-street. So also lots 154, 155, 156 157, in 133d-street existed and had been sold, while no such numbers had any application to any lots in 132d-street. Upon such a state of facts there is no difficulty in point of law in attributing the first four lots to 132d-street and the other four to 133d-street. The moment the language employed, and the lots sold on the 18th are regarded together, for the purpose of seeing what the significance of the language is, it is clear that the lot numbers relate, four of them, to 132d-street and the others to 133d-street. In that way they are sensible, in any other they fail to express a meaning.
Upon the points considered by the Superior Court and determined in favor of the plaintiff, we desire only to add, that the case of Pinckney v. Hagadom, (1 Duer, 89), was affirmed in this court in July, 1854.
The judgment should be reversed and a new trial granted.