## WILLIAMS *v.* MORRIS.

1. Under the laws of Maryland prevailing in the District of Columbia, an interest in lands made by livery and seisin only, or by parol, except leases not exceeding the term of three years, has only the force and effect of an estate at will.

2. The court applies to this case the doctrines announced in *Barry* v. *Coombe*, 1 Pet. 640, and *Purcell* v. *Miner*, 4 Wall. 513, as to what must be set forth in a written contract for the sale of lands, and what is sufficient part performance of a parol contract for such sale to take it out of the Statute of Frauds.

3. There is nothing in this case to bring it by analogy within the Statute of Limitations which govern courts of law.

APPEAL from the Supreme Court of the District of Columbia.

In February, 1856, James Williams leased by parol certain land in the city of Washington, the legal title to which stood in his name, to Thomas B. Florence, with the privilege by the latter of purchasing it for $6,000. In the following month, Florence entered into possession as tenant of said James, and made certain improvements. In October, 1856, Florence, having learned that the heirs of John Williams were entitled to an undivided moiety of the land, entered, with the consent of James, into a written contract with them for the purchase of their interest, which by decree was conveyed to him in 1864.

In April, 1853, and April, 1854, the property was sold for taxes. One Ingle purchased it, and, after the period allowed by law for redemption had expired, received deeds therefor from the corporation of Washington, dated June 11, 1857. Florence, after consultation with said James, paid Ingle the amount of the taxes and accrued expenses Dec. 29, 1859, and some months thereafter took from him a quitclaim for the property, which, with the corporation deeds to Ingle, he caused to be recorded. From March 1, 1856, to June, 1861, he remained in the personal occupation of the property. He then rented it to the United States for $175 per month, which rent he received until the commencement of this suit, Aug. 24, 1867, by the complainants, some of whom are minors. They are the heirs-at-law of James Williams, who died intestate Aug. 15, 1862.

The bill, after setting up the lease by James Williams to Florence, alleged, *inter alia*, that the defendant during his tenancy under the lease suffered by his default the property to be sold for taxes, and, having acquired the tax title, disclaimed his tenancy, and set up an adverse title in himself. It therefore prayed that Florence be decreed to convey to the complainants said tax title, and to account for a moiety of the rents and profits.

The defendant answered, setting up his parol contract with James to purchase, his subsequent discovery of the interest of the heirs of John in a moiety of the property, the fact of his purchase with the consent of James of that moiety, and its conveyance to him, and denied that thereafter he stood in the relation of tenant or paid rent; but, on the contrary, he paid all taxes and charges, and, with the full knowledge and consent of said James, acted generally as owner, and made repairs. He also alleged that said James had, by certain deeds of trust executed in 1843 and 1851, incumbered his moiety; and by another, executed in 1853, the whole property, in a sum beyond the amount of purchase-money and more than double the share of James for his moiety. That, notwithstanding said incumbrances, the defendant made various payments to said James, amounting from $1,500 to $2,000, on account of said purchase, but was unable to procure a settlement. The defendant filed with his answer the following receipts: —

"Received of Thomas B. Florence forty dollars, to be accounted for in the settlement for the purchase of the property at the corner of Pennsylvania Avenue and 17th Street, now in his occupancy, and sold by me to him.

"JAS. WILLIAMS.
"WASHINGTON, Jan. 1, 1857."

"WASHINGTON, May 1, 1857.
"Received of Thomas B. Florence one hundred dollars, on account of purchase of building 17th St. & Pa. Av. $100.

"JAS. WILLIAMS."

He also denied that he had suffered the property to be sold for taxes, but that said sales were for taxes due for the eight years preceding his entry.

On the 11th of March, 1873, the complainants were allow  d

to amend their bill by alleging that Florence, in October, 1856, purchased the undivided moiety of the heirs of John Williams, and thereby became tenant in common with James Williams; that, after said relation of tenants in common thus began, Florence purchased from Ingle the outstanding tax title, which was in all respects regular and according to law, and obtained from him a conveyance of the premises and of the full title thereof, which conveyance and title said Florence claimed to hold as his own, to the exclusion of the complainants.

The answer to the amended bill admitted the purchase in October, 1856, of the claim of the heirs of John Williams under the circumstances set forth in the answer to the original bill; denied that such purchase created, or was intended to create, a tenancy in common with James Williams; and averred that after the same the defendant held and enjoyed the premises as the exclusive and absolute owner. It further denied the validity of the tax title; averred it to be void on its face, and that it was bought, with the knowledge and approval of James Williams, to relieve the property from the outstanding charge for taxes; and that a deed was taken from Ingle, because one to him had been entered on the books of the city; and that the complainants' allegation of the validity of the tax title was simply a pretext whereby to gain some color for the asserted jurisdiction of a court of equity.

At the final hearing in special term, April 8, 1873, the court decreed that the tax title purchased by Florence from Ingle was taken by him in trust for the complainants to the extent of one undivided moiety thereof; that the parol purchase set up by him was void under the Statute of Frauds; and that, as there was no part performance to take it out of the statute, he should convey to the complainants said tax title to said moiety, and account for rents and profits.

Florence then appealed to the general term, where the decree of the special term was reversed and the bill dismissed. The complainants then brought the case here.

Florence having died *pendente lite*, Morris, his executor, was substituted in his stead.

The assignment of errors and other facts in the case are set forth in the opinion of the court.

*Mr. Richard T. Merrick* and *Mr. William A. Meloy* for the appellants.

The original lease in March, 1856, being merely by parol, was inoperative after three years. When, therefore, Florence terminated his personal occupancy of the premises in June, 1861, and with it the relation of landlord and tenant, he became as to one undivided moiety of them the bailiff of James. Williams, and liable to account under the statute of 4th Anne, c. 16, sect. 27. This alone would have established the jurisdiction of a court of equity over the case. But, in addition to that, Florence, by taking the conveyance in his own name from Ingle, committed a breach of trust and a fraud upon his co-tenant.

The tax title can afford no defence. The defendant's admission of the irregularity of the sale is conclusive, in the absence of proof by the complainants to the contrary. 3 Bl. Com. 451.

But even if the tax sale was valid, Florence, so far as one undivided moiety of the land was concerned, took the title in trust for James Williams. *Rothwell* v. *Dewees*, 2 Black, 613; *Van Horne* v. *Fonda*, 5 Johns. (N. Y.) Ch. 388; *Lewis* v. *Robinson*, 10 Watts (Pa.), 354; 1 Story, Eq., sect. 466; 1 Washburn, Real Prop. 430.

The memorandum set up by the defendant to take his alleged contract of purchase out of the operation of the Statute of Frauds is fatally defective. *Boydell* v. *Drummond*, 11 East, 157; *Huddlestone* v. *Briscoe*, 11 Ves. 591. The price to be paid, and a definite description of the property, are material parts, and cannot be proved by parol. *Elmore* v. *Kingscote*, 5 Barn. & Cress. 583; *Taney* v. *Batchell*, 9 Gill (Md.), 205; *Tallman* v. *Franklin*, 14 N. Y. 584; 1 Greenl. Evid., sect. 268; 2 Story, Eq. Jur., sects. 765–767. Whether it be set up as a defence, or as a ground for specific performance, the rules are the same. Browne, Frauds, sects. 122, 122 *a*, 131; *Carrington* v. *Roots*, 2 Mee. & W. 248; *Reede* v. *Lamb*, 6 Exch. 130. And a court of equity will not give relief, unless all the essential terms of the parol agreement are established by satisfactory proof, and the part performance has been of such a kind that to refuse relief would unavoidably operate as a fraud upon

the party.  *Clinan* v. *Cooke*, 1 Sch. & Lef. 41; *Galbreath* v. *Galbreath*, 5 Watts (Pa.), 150; *Purcell* v. *Miner*, 4 Wall. 513; *Caldwell* v. *Carrington*, 9 Pet. 86; 3 Phil. Evid. 351; *Small* v. *Owings*, 1 Md. Ch. 364; *Beard* v. *Linthicum*, id. 345; *Elmore* v. *Kingscote*, 5 Barn. & Cress. 583; 1 Greenl. Evid., sect. 268; *Owings* v. *Baldwin*, 1 Md. Ch. 123; 2 Story Eq., sects. 764–767; *Phillips* v. *Thompson*, 1 Johns. (N. Y.) Ch. 131; *Taney* v. *Batchell, supra.* The part performance which takes the case out of the statute does not consist in the payment of money, but in the delivery of the possession in pursuance of the contract, with a view to the performance of it.  *Caldwell* v. *Carrington*, 9 Pet. 103; *Christy* v. *Barnhart*, 14 Pa. 260; *Brawdy* v. *Brawdy*, 7 id. 157; *Phillips* v. *Thompson*, 1 Johns. (N. Y.) Ch. 149; *Parkhurst* v. *Van Cortlandt*, id. 273. Possession by a tenant is not sufficient, 1 Sugden, Frauds, 149, 162; nor is that by a tenant in common, however exclusive and notorious. *Galbreath* v. *Galbreath*, 5 Watts (Pa.), 146.

The expenditures for permanent improvements must have been made solely on the faith of the contract of sale, and the possession taken with exclusive reference to it.  *Owings* v. *Baldwin, supra;* 2 Story, Eq. Jur., sects. 763, 764; *Moale* v. *Buchanan*, 11 Gill & J. (Md.) 314; *Caldwell* v. *Carrington, supra.*

The rulings in regard to laches, staleness, or lapse of time have no application to this case.  *Badger* v. *Badger*, 2 Wall. 87.

*Mr. Walter D. Davidge, contra.*

The bill of the complainants should have been dismissed. It was not filed until nearly ten years after the purchase complained of, and nearly five years after the death of James Williams. There is no allegation of fraud, and no attempt to explain the delay.  *Marsh* v. *Whitmore*, 21 Wall. 178; *Badger* v. *Badger*, 2 id. 87; *Harwood* v. *Railroad Company*, 17 id. 78; *The Key City*, 14 id. 653; *Twin-Lick Oil Company* v. *Marbury*, 91 U. S. 587.

Whilst a tenant cannot dispute the title of his landlord, he may show that it has expired or become extinguished. Taylor, Land. and Ten., sect. 629, and cases cited. When the reversion is sold under execution, he may buy it, and set up against the landlord the title so acquired.  *Nellis* v. *Lathrop*, 22 Wend.

(N. Y.) 121 ; *Jackson* v. *Rowland,* 6 id. 666 ; *Depard* v. *Walbridge,* 15 N. Y. 374. When not under obligation to pay taxes, he may even buy at a tax sale.    Cooley on Taxation, 345, 346. And the title so acquired, if the proceedings conformed to the statute, extinguishes his former relation to the landlord.  *Kirkpatrick* v. *Mathiot,* 4 Watts & S. (Pa.) 251 ; *Lewis* v. *Robinson,* 10 Watts (Pa.), 354 ; *Watkins* v. *Eaton,* 30 Me. 529 ; *Reinboth* v. *The Zerbe Run Improvement Co.,* 29 Pa. 139.

The averment of the validity of the tax title is binding on the complainants.    They can recover only *secundum allegata et probata ;* and, if that title be invalid, there is no ground for the exercise of equitable jurisdiction.    *Ewing* v. *St. Louis,* 5 Wall. 413 ; *Dows* v. *Chicago,* 11 id. 108 ; *Hannewinkle* v. *Georgetown,* 15 id. 547 ; *Scott* v. *Onderdonk,* 14 N. Y. 9 ; *Cox* v. *Clift,* 2 id. 118 ; *Heywood* v. *The City of Buffalo,* 14 id. 534 ; *Ward* v. *Dewey,* 16 id. 519 ; *Piersoll* v. *Elliott,* 6 Pet. 95.

The two receipts signed by James Williams contain all the requisites of the note or memorandum under the Statute of Frauds, except that of price, and are *prima facie* evidence of a sale legally made.  *Slatterie* v. *Pooley,* 6 Mee. & W. 663 ; 1 Phil. Evid. (4th Am. ed. 1859), pp. 422–424, where the authorities are collected ; 1 Taylor, Evid., p. 413, sect. 381 ; Best, Evid., sects. 525, 526.

The English rule has been followed in America.    *Smith* v. *Palmer,* 6 Cush. (Mass.) 513 ; *Loomis* v. *Wadhams,* 8 Gray (Mass.), 557 ; *Taylor* v. *Peck,* 21 Gratt. (Va.) 11.

The particulars of the contract are not involved in this suit.    The controlling question is whether Florence bought at all, not upon what terms.    The *factum probandum* is the fact of purchase, and the contract is wholly collateral.    *Rex* v. *Inhabitants of Holy Trinity,* 7 Barn. & Cress. 611 ; *Doe* v. *Harvey,* 8 Bing. 239, 241 ; *Spiers* v. *Willson,* 4 Cranch, 398 ; 1 Greenl. Evid., sects. 96, 97 ; 1 Taylor, Evid., sect. 376 ; *Taylor* v. *Peck,* 21 Gratt. (Va.) 11.

Parol contracts do not involve any violation of law.    Courts of equity refuse to extend their aid to rescind them merely because they are not in writing.    Browne, Frauds, sect. 123, and cases cited ; id., sects. 129–131 ; *Abbott* v. *Draper,* 4 Den. (N. Y.) 51 ; *Cope* v. *Williams,* 4 Ala. 362.

The court is asked to decree that a vendee acquiring in good faith a title necessary to protect the interests of himself and his vendor, is a trustee for the heirs-at-law, who, after the lapse of eleven years, undertake to repudiate the agreement of their ancestor.

Had he attempted by means of the tax title to escape his obligations as vendee, he could properly be held a trustee as to the unpaid purchase-money. The purchase-money, however, deducting the mortgages, has been paid, and he offers to account; and, besides, the bill is in repudiation and not affirmance of the contract.

The question is, then, whether, after such a vendee has obtained a perfect title which he holds in subordination to the parol contract, he can, without any imputation of fraud, be held a trustee, except as to his obligations under that contract. That he cannot be so held is plain, in principle and upon authority.


MR. JUSTICE CLIFFORD delivered the opinion of the court.

Sufficient appears to show that the complainants are the heirs-at-law of James Williams, who died intestate Aug. 16, 1862, seised in fee of an undivided moiety of lot 1 in square 160 on the plan of the city of Washington, bounded as described in the bill of complaint: and they allege that their intestate, six years before his decease, acting for himself and for the heirs of his brother previously deceased, who in his lifetime owned the other moiety of the premises, rented the whole lot to the first-named respondent for the yearly sum of $600; that the rent was subsequently increased, and that the lessee has ever since remained in the possession of the undivided moiety which belonged to the intestate, and that a large amount of the rent is in arrear, the respondent having paid only an inconsiderable amount of the same to the lessor during his lifetime, and nothing to the complainants since his decease.

Superadded to that, the charge of the complainants is that the respondent, while so in possession of the premises as tenant, did by his own default suffer the taxes assessed on the lot to remain unpaid, that the premises were sold at a tax sale, and that he claims to hold the same by virtue of that sale: but

they allege that the title, if any, acquired to the moiety in question inured to their benefit; and they further show that the respondent has recently, in violation of his duty as tenant, repudiated his tenancy, and claims title to the premises under some pretended contract with the lessor in his lifetime for the purchase of the same, all of which claim the complainants aver is unfounded.

Based upon these allegations, the complainants allege that the respondent has terminated his tenancy; and they charge that he has ever since held the property, and received from the United States large rents for the same, for which he is justly accountable; and they pray for an account of all moneys due for such rent to them and to the widow of the deceased lessor, and that he be decreed to convey to the complainants all title to the moiety of the premises he acquired by the tax sale, and for general relief.

Service was made, and the first-named respondent appeared and filed an answer, setting up several defences. Proofs were taken on both sides, and the court at special term entered a decree in favor of the complainants. Due appeal was taken by the respondent to the general term; when both parties were again heard, and the Appellate Court reversed the decree entered at the special term, and dismissed the bill of complaint.

From that decree the complainants appealed to this court, and now assign the following errors: 1. That the court erred in finding, as matter of fact, that there was any contract made by the intestate in his lifetime for the sale of his moiety of the premises. 2. That the court erred in giving effect to the alleged contract, as it was within the Statute of Frauds. 3. That the court erred in refusing to allow the complainants to contribute to the payment of the tax debt to relieve their title from the cloud of the tax sale. 4. That the court erred in not requiring the respondent to account for the rents and profits.

Prior to the origin of the present controversy, the premises, with the building thereon standing, had been the partnership property of the two brothers named in the bill of complaint. Possession of the premises was taken by the respondent, and he proceeded to repair the building, and expended several hundred dollars in fitting up the lower story of the same as an office for

the insurance company of which he was president. Six months later or more, the respondent entered into a formal written contract with the heirs of the other deceased owner ; whereby they agreed to sell and convey to him the other moiety of the premises, and he agreed to purchase the same for the sum of $3,000, to be paid $1,000 in cash and the rest in notes.

Corporation taxes for two years — to wit, for the years 1853 and 1854 — not having been paid, the proper authorities sold the premises for the payment of the same ; and the record shows that one John P. Ingle became the purchaser at each of the sales, and that the right of redeeming the property had expired before the respondent went into possession. Deeds of the premises were subsequently executed, and delivered to the respondent ; but he did not at the time put them on record, probably for the reason that the sales were irregular and that the deeds conveyed no valid title.

Negotiations subsequently ensued between the respondent and the purchaser of the premises at the tax sales, which resulted, with the approval of the lessor, in an arrangement that the respondent should pay the amount of the taxes and expenses and take up the tax deeds ; and the evidence shows that the arrangement was carried into effect.

Nothing remained in that regard for substantial controversy ; but the respondent six months thereafter induced the purchaser at the tax sales to give him a quitclaim deed of the whole lot, and at a still later period put all three deeds on record, showing the title to the entire premises in himself. Throughout the whole period, the respondent continued to occupy the premises, until June, 1861, when he rented the same to the United States at $175 per month ; which rental he has since received.

Viewed in the light of these suggestions, much discussion of the title of the complainants, irrespective of the defences set up in the answer, is unnecessary ; as it is obvious that they are entitled to a decree in their favor, unless the defences or some one of them can be sustained.

Three of the defences set up in the answer will be separately considered : 1. That the respondent was lawfully in possession of the lot with the tenement thereon, under a parol contract with

the complainants' intestate for the purchase and conveyance of his moiety of the premises. 2. That the pretended claim set up by the complainants is stale, and ought not to receive the countenance of the court of equity as the ground for the relief prayed. 3. That the cause of action set up in respect to the matters alleged, if any, occurred more than three years before the filing of the bill of complaint or the service of process; and that the respondent did not, at any time within three years next before the filing of the bill or the service of process, agree to come to any account or pay any sum of money to the complainants by reason of the matters therein charged.

Briefly stated, the matters alleged in the answer in support of the first defence are, that the respondent, in the month of February, 1856, entered into a contract with James Williams, under which he rented the premises at the rate of $650 a year, with the right thereafter to purchase the same for the sum of $6,000, the lessor representing at the time that he was the sole owner of the same; and that he, the respondent, entered into the possession of the lot and tenement, and proceeded to make extensive improvements and alterations in the tenement; that six months later he learned, to his great surprise, that the heirs of John Williams, deceased, were entitled to a moiety of the estate; and that he, the respondent, in order to confirm his title, and at the instance and with the approval of his lessor, entered into a contract with the heirs of the deceased owner, whereby one-half of the purchase-money was agreed to be paid to them as such owners of the moiety which belonged to their intestate in his lifetime; and he also alleges that, on the 22d of October, 1856, he delivered to their attorney two checks (each for $500), and four promissory notes (each for the sum of $500), in payment for the moiety of the property to which those parties were entitled.

Apart from that, the respondent alleges in his answer that the premises were heavily incumbered by mortgages; and that at the time or before the date of the contract for the purchase of the other moiety it was further agreed, between him and the owner of the moiety now in question, that he, the respondent, should purchase the same, in pursuance of the original contract,

for the sum of $6,000, and that the grantor should be entitled to a moiety only of the purchase-money.

Two contracts are, therefore, alleged for the sale and purchase of the premises; and it is obvious that they are widely different in form and substance. As alleged, the first is for the purchase of the entire lot and tenement; and the second is for the purchase of the moiety only which belonged to the complainants' intestate. Under the first contract, the entire consideration was to be paid to the party contracting to make the conveyance; but by the terms of the second, one-half only of the consideration was to be paid to that party for his benefit, the clear inference being that the purchaser had previously purchased or contracted to purchase the other moiety of the heirs of the deceased owner.

Evidence to show that the first contract, if made, was ever fulfilled, is entirely wanting; nor is there a particle of evidence that any such contract as the one secondly alleged was ever made or proposed between the parties. Suppose it were otherwise, and that the parol evidence introduced was sufficient to show that one or both of the alleged contracts were actually made in adequate terms and free of ambiguity, still the evidence would not constitute a defence to the suit, for the reason that the alleged contracts would be within the Statute of Frauds.

Interests in lands, except leases not exceeding the term of three years, made or created by livery and seisin only, or by parol and not put in writing and signed by the parties so making or creating the same, or their agents thereunto lawfully authorized by writing, shall have the force and effect of leases or estates at will only; and shall not, either at law or in equity, be deemed or taken to have any other or greater force or effect. 1 Kilty's Laws, Md. 242.

No action shall be brought . . . upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them, . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or by some person thereunto lawfully authorized. Browne, Frauds, 503.

Argument to show that the respondent did not derive any valid title to the premises under the tax deeds is unnecessary, as the amended answer admits that the tax deeds did not convey any title whatever, and the respondent testified to the same effect. Even if the deeds had been regular, they would not benefit the respondent; as in that event the legal conclusion would be that the respondent, as the tenant of the lessor, held the title in trust for his landlord. *Rothwell* v. *Dewees*, 2 Black, 613; *Van Horne* v. *Fonda*, 5 Johns. (N. Y.) Ch. 388; 2 Story, Eq. Jur., sect. 1211 *a*.

Tenants are never allowed to deny the title of their landlord, nor set up a title against him, acquired by the tenant during the tenancy, which is hostile in its character to that which he acknowledged in accepting the demise; the rule being that whenever the possession is acquired under any species of tenancy, whether the action be assumpsit, debt, covenant, or ejectment, the tenant is estopped from denying the title of the landlord. Taylor, Land. and Ten., sects. 629, 705; *Jackson* v. *Harper*, 5 Wend. (N. Y.) 246; *Sharp* v. *Kelley*, 5 Den. (N. Y.) 431; *Doe* v. *Smythe*, 4 M. & S. 347.

Attempt is made to take the case out of the protection of the Statute of Frauds by the receipts given in evidence; but it is clear that they fall far short of what is required to accomplish that object. 3 Phil. Evid. (4th Am. ed.) 351; *Tallman* v. *Franklin*, 14 N. Y. 584; *Elmore* v. *Kingscote*, 5 B. & C. 583.

Decided cases everywhere require that the memorandum should mention the price. Nothing is contained in either receipt to fulfil that requirement, nor do the receipts contain any thing of an unambiguous character to enable the court to determine what real estate is the subject of the purchase. Part of the property lying west of the tenement, the evidence shows, was never occupied by the respondent; and the second receipt, in terms, limits the purchase to the tenement which the respondent occupied and repaired. None of the terms, says Mr. Phillips, can be left to be supplied by parol; and, if not, it is clear that the receipts are not sufficient to support the theory of the defence. *Baptist Church* v. *Bigelow*, 16 Wend. (N. Y.) 28; *Morton* v. *Dean*, 13 Metc. (Mass.) 385.

Unless the essential terms of the sale can be ascertained from the writing itself, or by reference in it to something else, the writing is not a compliance with the statute; and, if the agreement be thus defective, it cannot be supplied by parol proof, for that would at once introduce all the mischiefs which the statute was intended to prevent. 2 Kent, Com. (12th ed.) 511; *Norris* v. *Lain*, 16 Johns. (N. Y.) 151; *Dung* v. *Perkins*, 52 N. Y. 494; *Baltzen* v. *Nicolay*, 53 id. 467; *Wright* v. *Weeks*, 25 id. 153; *Parkhurst* v. *Van Cortlandt*, 1 Johns. (N. Y.) Ch. 273; s. c. 14 id. 15.

Any note or memorandum in writing which furnishes evidence of a complete and practicable agreement is sufficient under the statute, and parol evidence is admissible to explain latent ambiguities, and to apply the instrument to the subject-matter. *Barry* v. *Coombe*, 1 Pet. 640; *Clark* v. *Burnham*, 2 Story, 131; Story, Sales, sect. 257.

Diversity of decision undoubtedly exists; but this court decided, in the case of *Purcell* v. *Miner*, 4 Wall. 513, that the proof as to the terms of the contract must be clear, definite, and conclusive, and must show a contract, leaving no *jus deliberandi* or *locus penitentiæ;* that it cannot be made out by mere hearsay or evidence of the declarations of a party to mere strangers to the transaction, in chance conversation, which the witnesses have no reason to recollect from interest in the subject-matter, and which may have been imperfectly heard or inaccurately remembered, perverted, or altogether fabricated; that the proof must also show that the consideration has been paid or tendered, or that there has been such part performance of the contract that its rescission would be a fraud on the other party, which could not be compensated by the recovery of damages; or that the delivery of possession has been made in pursuance of the contract, and has been acquiesced in by the other party.

Tested by these considerations, it is clear that the attempt to prove a written contract utterly fails, and that there is no satisfactory evidence to prove any such part performance of the supposed contract as will take the case out of the operation of the statute.

Where the attempt is to take the case out of the statute

upon the ground of part performance, the party making the attempt must show by clear and satisfactory proof the existence of the contract as laid in his pleading, and the act of part performance must be of the identical contract which he has in that manner set up and alleged. It is not enough that the act of part performance is evidence of some agreement; but it must be unequivocal and satisfactory evidence of the particular agreement charged in the bill or answer. *Phillips* v. *Thompson*, 1 Johns. (N. Y.) Ch. 131; Browne, Frauds, sect. 452.

Specific performance in such a case will not be decreed, unless the terms of the contract are clearly proved or admitted; and a sufficient part performance is made out to show that fraud and injustice would be done if the contract was held to be inoperative; and all the authorities agree that the acts of part performance must be such as are referable to the contract as alleged, and consistent with it. Woodfall, Land. and Ten. (9th ed.) 942; *Price* v. *Salusbury*, 32 Beav. 446; *Tompkinson* v. *Straight*, 17 C. B. 697.

Nothing is part performance for this purpose which is only ancillary or preparatory: it must be a direct act which is intended to be a substantial part performance of an obligation created by the contract as proved; and it must be an act which would not have been done but for the contract; and it must be directly in prejudice of the party doing the act, who must himself be the party calling for the completion of the contract. *Jones* v. *Peterman*, 3 Serg. & R. (Pa.) 543; *Morphett* v. *Jones*, 1 Swans. 172; *Ex parte Hooper*, 19 Ves. 477; *Frame* v. *Dawson*, 14 id. 385; *Buckmaster* v. *Harrop*, 7 id. 341; 3 Pars. Contr. (6th ed.) 60.

Where one of the two contracting parties has been induced or allowed to alter his position on the faith of such contract, to such an extent that it would be fraud on the part of the other party to set up its invalidity, courts of equity hold that the clear proof of the contract and of the acts of part performance will take the case out of the operation of the statute, if the acts of part performance were clearly such as to show that they are properly referable to the parol agreement. Chitty, Contr. (10th ed.) 66, 278; 2 Story, Eq. Jur., sect. 761.

Courts of equity sometimes, in cases of concurrent jurisdiction, follow by analogy the statute of limitations which govern courts of law in like cases; but there is nothing in the facts of the case before the court to bring it within the operation of that rule.

Beyond all question, the fee-simple title of the property was in the original lessor; and it is equally clear that the respondent entered into the possession of the premises as the tenant of the lessor, under an agreement to pay a stipulated rent, and the record shows that he continued to hold possession of the same until the time of his decease, or until he rented the same to the United States; nor does the fact that he, subsequently to the entry, denied the title of his landlord, have any just influence to support the defence of limitation or laches, inasmuch as the case shows that he did so without any just cause or legal excuse. Authorities to support that proposition are quite unnecessary, as to hold otherwise would be to sanction injustice and encourage fraud.

From these suggestions it follows that the decree in the court of original jurisdiction was correct; but inasmuch as the account was not taken, *Nellis* v. *Lathrop*, 22 Wend. (N. Y.) 121, the decree rendered at the general term will be reversed and the cause remanded, with directions to enter a decree for the complainants for further proceedings in conformity to the opinion of this court; and it is        *So ordered.*

MR. JUSTICE FIELD and MR. JUSTICE BRADLEY dissented.