## BUTTZ, Respondent, v. COLTON, Appellant.

1. **Appeal — Review — Findings — Insufficiency of the Evidence.**
   Where there is no substantial conflict in the evidence and the findings are against the weight of the evidence, an appellate court will reverse a judgment founded on such findings.

2. **Same — Specific Performance — Contract — Validity.**
   In an action for specific performance the plaintiff obtained a decree on the contract, modified, as he contended; but the contract, however, was that the defendant, in consideration of the plaintiff's undertaking to have the county in which the land was situated organized, the county seat placed near the land and a certain railroad constructed there, agreed to convey to him sixty acres in a certain quarter section less such amount as he should find necessary to give the railroad company to induce it to come, and (after the county had been organized and the county seat located as contemplated) the plaintiff contending that the company had agreed to come for forty acres, and that the original contract had been modified by parol so that he was to have the balance of the sixty acres in another quarter section and that there had been a part performance of the contract as modified, but the evidence on these issues showing merely the expression of opinion by the agent of the company that he thought the road could be induced to come for forty acres, and it appearing the defendant had obligated himself to the company to convey to it sixty acres to induce it to come, and that he had not been released from that obligation, and it also appearing that the alleged part performance could as well be referred to the defendant's obligation to the company as to the alleged modified contract, *held*, the decree should be reversed and that the contract itself was not of a character to appeal strongly to a court of equity for enforcement. PALMER, J., dissenting.

3. **Same—Part Performance.**
   An act in part performance must be with reference to the particular contract sought to be enforced.

#### 4. Contract — Modification — Sufficiency of Evidence.

The modification of a written contract by a parol agreement must be clear and satisfactory.

(Final argument Feb. 21, 1888; reversed Feb. 24,.1888; opinion filed Oct. 9, 1889.)

APPEAL from the district court, Cass county; Hon. S. A. HUDSON, Judge.

The court below found that by the parol modification of the contract the respondent was to have the land to which he was entitled from section 11 instead of section 1 as provided in the written contract. All of the other facts appear in the opinion.

*Stone & Newman,* for appellant.

The rule as to the specific performance of parol contracts for the conveyance or exchange of lands is, that the party should be held rigidly to full, satisfactory and indubitable proof of the contract: (1) Such proof must be clear, definite and conclusive. (2) It must show that the consideration has been paid or tendered. (3) It must show such a part performance of the contract, that its rescission would be a fraud on the other party and could not be fully compensated by a recovery at law. (4) It must show that delivery of possession has been made in pursuance of the contract and acquiesced in by the other party. Waterman, Spec. Perf., § 265; Colson v. Thompson, 2 Wheat. 336; Purcell v. Miner, 4 Wall. 513; Phillips v. Thompson, 1 Johns. Ch. 131; Lobdell v. Lobdell, 36 N. Y. 327; Knoll v. Hervey, 19 Wis. 110; Blanchard v. McDougal, 6 id. 165; Delavan v. Duncan, 49 N.Y. 485; Harris v. Knickerbocker, 5 Wend. 638; Lester v. Kinne, 37 Conn. 9; 1 Story, Eq. Jurisp., §§ 764, 767; Pomeroy, Spec. Perf., § 136; Odell v. Morin, 5 Oreg. 96; Wood, Frauds, 65.

Applying these rules to the case the evidence fails to show that the pretended parol modification was ever made, it is not a case of insufficiency of evidence but total failure of proof. Not only does the evidence fail to show any modification for an exchange, but all the circumstances connected with the matter conclusively establish that no such parol modification ever existed. But even if the modification claimed had been made, no such part performance is shown that rescission would be a fraud on respond-

ent and could not be fully compensated by damages. The part performance required to take the case out of the statute is a delivery of possession and the making of improvements in good faith, so that a failure to enforce the contract would place the vendee in the position of a trespasser and subject him to the loss of his improvements and a payment of the purchase-price. Pomeroy, Spec. Perf., §§ 115–130; Waterman, Spec. Perf., §§ 262, 270, 272; Story, Eq. Jurisp., § 761; Fry, Spec. Perf., § 562; Horn v. Ludington, 32 Wis. 73; Edwards v. Estell, 48 Cal. 194; Townsend v. Fenton, 21 N. W. Rep. 726; Percell v. Miner, 4 Wall. 513; Baker v. Wiswel, 22 N. W. Rep. 111.

It is claimed the consideration has been paid by the performance of the services stipulated by the contract; even if this were so, it would not be such a part performance as would have entitled respondent to a decree. Pomeroy, Spec. Perf., § 109; Wood, Frauds, § 496; 2 Suth. Dam. 453; Horn v. Ludington, 32 Wis. 73; Edwards v. Estell, 48 Cal. 194; Wallace v. Long, 5 N. E. Rep. 666.

The platting and conveyance to the railroad was not in pursuance of the contract between appellant and respondent.

The written contract and its pretended oral modification are void as against public policy. The main object of the contract was to secure the location of the county seat of Ransom county at Lisbon and the appointment of men nominated by appellant as county commissioners of that county. Chap. 21, Pol. C.; Oscanyan v. Armes Co., 103 U. S. 261; Bartle v. Nutt, 4 Pet. 184; Holliday v. Patterson, 5 Oreg. 177; Tryst v. Child, 21 Wall. 441; Tool Co. v. Norris, 2 id. 45; Rose v. Truax, 21 Barb. 361; Gray v. Hook, 4 N. Y. 449; Meguire v. Corwine, 101 U. S. 108; Harris v. Roof, 10 Barb. 489; Marshall v. Baltimore & O. R. R. Co., 16 How. (U. S.) 144; Hannah v. Fife, 27 Mich. 172; Edwards v. Estelle, 48 Cal. 194; Fuller v. Dame, 18 Pick. 472; Gould v. Kendall, 19 N. W. Rep. 483; St. Joseph R. R. Co. v. Ryan, 15 Am. Rep. 357; Greenhood, Public Policy, 357.

*A. D. Thomas* and *Wilson, Ball & Wallin,* for respondent.

The authorities cited by appellant to the effect that the proof of an oral agreement within the statute of frauds must be "full,

clear and satisfactory," state the rule by which evidence is weighed in courts of original jurisdiction and in those appellate courts in which, in equity causes, the whole case is taken up, the evidence examined and a decree rendered on appeal, without regard to the findings of the lower court. Under the Code of this territory, however, the supreme court, when reviewing the findings of the district court will no more weigh conflicting evidence in an equity case than in one at law. Duggan v. Davey (Dak.), 26 N. W. Rep. 887, 889; Ritter v. Stock, 12 Cal. 402; Doe v. Valejo, 29 id. 386; Donohoe v. Mariposa L. & M. Co., 66 id. 317, 327.

There was part performance that took the contract out of the operation of the statute of frauds. Fry, Spec. Perf., §§ 557, 562–564; Malins v. Brown, 4 N. Y. 403; Fisher v. Moolick, 13 Wis. 321; Daniels v. Lewis, 16 id. 140; Paine v. Wilcox, id. 202; Martineau v. May, 18 id. 54; Waterman, Spec. Perf., §§ 261, 270; Livingston v. Livingston, 2 Johns. Ch. 537; Ryan v. Dox, 34 N. Y. 307, 319; Williams v. Marris, 95 U. S. 444, 456; Edwards v. Estell, 48 Cal. 194; Brown v. Mury, 3 S. W. Rep. 175; Farwell v. Johnson, 34 Mich. 342; Pomeroy, Spec. Perf., § 117.

The illegality of the contract as being opposed to public policy was not pleaded. While a court is at liberty to determine such a question of its own motion, and is bound to do so at the instance of a party by whom it has been properly raised, still, if the defendant has not plead the illegality, and the trial court has not declared it illegal, but rendered a judgment thereon against the defendant, an appellate court will refuse to interfere. Goss v. Austin, 11 Allen, 525; Bradford v. Tinkman, 6 Gray, 494; Cardose v. Swift, 113 Mass. 250; Finlay v. Quirk, 9 Minn. 194, 198; Dingeldein v. Third Ave. R. Co., 9 Bosw. 79, 91; Schreyer v. Mayor 39 N. Y. Sup. Ct. 1; Atchinson v. Miller, 21 N. W. Rep. 452; Sharon v. Sharon, 8 Pac. Rep. 614.

The contract is not opposed to public policy. The presumption is that the parties intended what was legal. Pratt v. Am. Bell Tel. Co., 5 N. E. Rep. 308; Greenhood, Pub. Policy, 26. See, also, Oscanyan v. Armes, 103 U. S. 261, 275; Trist v. Child, 21 Wall. 441; Wright v. Tibbits, 91 U. S. 252; Wylie v. Coxe, 15 How. 415; Stanton v. Embry, 93 U. S. 548.

On examination it will be found that all the authorities cited

by appellant fall within one or more of the following classes : **(1)** Where the contract is one necessarily tending to a violation, by one of the parties, of some special duty which he owes to the government, or a third person ; (2) to interfere with the business operations of the government ; (3) contemplates, or will lead to the employment of secret and sinister attempts and influences upon members, to affect the action of an official or legislative body ; and (4) where the contract is in effect an agreement for the sale of personal influence, to be exercised upon a public officer in the discharge of his duties. This case does not fall within the doctrine of any of the authorities cited.

TRIPP, C. J. This is an action in the nature of a suit for specific performance of contract. The case was tried to a referee, upon whose report the court made separate findings of fact and conclusions of law, directing an enforcement of the contract, and from the judgment so entered the defendant appeals to this court.

It appears from the record of the case that in the fall of 1880, and prior thereto, the defendant, Colton, was the owner or claimant of four hundred acres of land, upon which the town of Lisbon, Ransom county, now stands; that several surveys had been made by the south-western branch of the Northern Pacific railroad, near this land,— one north, one south, and one through it. The defendant was anxious to secure the railroad through his place, and negotiations were being had between him and the railroad company, represented by one Delano, its general construction and town-site agent. The company demanded the right of way through defendant's land, and eighty acres in lots to be selected by the company from one hundred and sixty acres to be platted by the defendant and one Harris, an adjoining claimant ; but, finally, some time in December, 1880, or January, 1881, it was agreed between defendant and the company (a memorandum of which was in writing and subsequently embodied in form of a written agreement) that the road should be so changed as not to cut through the defendant's land, but only across its south-east corner ; and that the defendant should give to the railroad company the one-half of one hundred and twenty acres of said land, to be platted into lots and blocks, each selecting therefrom alternate half-blocks, etc. Subsequently, on the 5th of February, 1881, the defendant

entered into a contract with plaintiff, which forms the subject-matter of this suit, and the substantial parts of which, omitting the formal parts, are as follows :

"The party of the first part represents that he is the owner of certain land at the place called 'Lisbon,' in said county, to-wit: West $\frac{1}{2}$ of S. W. $\frac{1}{4}$ of section one, eighty acres; also the E. $\frac{1}{2}$ of the S. E. $\frac{1}{4}$ of section two, it being eighty acres; also the N. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$, and the S. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$, of section two, being eighty acres; and also the N. E. $\frac{1}{4}$ of section eleven, it being one hundred and sixty acres,—in all, four hundred acres. The party of the first part desiring to have the said county of Ransom organized, and the county seat located at said town of Lisbon, and the said party of the first part being desirous of having the south-west branch of the Northern Pacific railroad cross the Cheyenne river at said town of Lisbon, at or near the line now located by said railroad company, therefore the said party of the first part agrees to employ, and does hereby employ, Charles W. Buttz, the party of the second part, as his attorney and agent for the purpose of working to accomplish the above-named object in such manner as said Buttz shall think proper. The said Buttz agrees to visit or have some other person visit Yankton, Dakota, if necessary, in the interest of the party of the first part, and to employ and obtain the assistance of any person or persons that he may see fit to aid in the work of accomplishing the object of this agreement. Now, if the said railroad crosses the said river at or near the line now located at the said town of Lisbon, and the county seat of said county is located at said town of Lisbon, then and in that case the party of the first part agrees to sell, and does hereby sell and assign, unto said Buttz, party of the second part, sixty acres of said land, to be selected as follows : The party of the first part agrees to have one hundred and twenty acres laid out in town lots, said lots to be situated as follows : Sixty acres in N. E. $\frac{1}{4}$ of section eleven, twenty acres in E. $\frac{1}{2}$ of S. E. $\frac{1}{4}$ of section two, forty acres in the west $\frac{1}{2}$ of S. W. $\frac{1}{4}$ of section one ; all being in said township 134, range 56, Ransom county. The parties hereto agree to take each alternate lot. The said Buttz, party of the second part, agrees to pay or give to the said S. W. branch of the Northern Pacific

Railroad Company any and all the lands that may be agreed upon by said Buttz and railroad company, necessary to secure said location, out of the said sixty acres; and the parties to this agreement hereby agree that the said railroad company shall have the right to take any alternate block or blocks, acres or parts of acres, or lots in any part of said described lands. All lands so taken by said railroad company, after being agreed upon, shall, as aforesaid, be deducted out of said sixty acres to be paid over to party of second part. The party of the first part hereby agrees to make a deed free of charge for the number of acres or lots agreed upon to said railroad company, and then the said party of the first part agrees to make a deed conveying the remainder of the said sixty acres, blocks, or lots to the said C. W. Buttz, party of the second part, for and in consideration of the duties and services rendered and to be rendered; said conveyances to be free of all charges, except the services said Buttz renders as attorney to party of the first part. If any other railroad should be built upon another line than the one mentioned in this agreement, into the said town of Lisbon, before the road mentioned in this agreement, then this agreement to be null and void. It is further agreed that unless commissioners are appointed within sixty days from date of this agreement, to organize said county, then this agreement to be void."

It appears that commissioners were appointed within the sixty days, and that the county seat was located at Lisbon, as contemplated by the contract. There is some conflict as to whether the road was located as contemplated by the agreement; and there are other matters of contention between the parties as to whether other minor conditions of the contract were fulfilled by the plaintiff; but in the view we have taken of the case, it will not be necessary to consider them.

The defendant subsequently planted one hundred and twenty acres of said land, and conveyed to the railroad company each alternate one-half block, as contemplated in the agreement with the agent Delano; and he declined to convey to the plaintiff any of the land whatsoever under the contract with him. Plaintiff commenced suit against the defendant on or about the 12th of December, 1881, asking a specific performance of the written con-

tract. Subsequently, in February, 1883, the complaint was amended by leave granted, again asking a specific performance of the written contract; and in May, 1883, upon order of the court to make more specific, the complaint was again amended, setting up the parol modification of the written contract. Two questions of fact are, among others, contested by the defendant: (1) The modification of the written contract by parol; (2) that any contract was made by plaintiff with the railroad company whereby it agreed to receive less than sixty acres of land from the defendant. The findings of the court and referee complained of by the defendant are all excepted to, and the record presents all the evidence upon which these findings were made, and likewise all the evidence in the case. The case has been twice argued in this court.

A great deal of learning has been displayed in the arguments and briefs of counsel, not only upon the main questions involved, but as to how far, under our peculiar pleadings, as governed and controlled by the organic act, this appellate court can weigh and consider the evidence in an equity case; and we are referred to the case of Stringfellow v. Cain, 99 U. S. 613, as laying down the doctrine that in such a case as this, should there be a reversal, the court must find the facts, instead of sending it back for a new trial; and concluding therefrom that the court must weigh the evidence in such cases in the same manner as in cases formerly cognizable in chancery. The question is an interesting one, how far the court in any case on appeal, under our practice, may weigh and consider the evidence. It is sufficient for this case, however, to say that the old *scintilla* rule no longer obtains; and the courts are quite unanimous to this extent in holding that, unless there is a substantial conflict, where the finding is against the evidence the judgment will be reversed.

The plaintiff seeks to recover upon a parol modification of the written contract. Such modification, however, is not so far independent of the written contract that it can be considered as a separate contract. The modification or modified contract, so far as its consideration is concerned, is based solely upon the written contract; and the conditions upon which such written contract was based are the conditions of the modified contract. Therefore it becomes necessary to inquire what the plaintiff and defendant

VOL. 6, DAK.—40

did contract to do. Certain of the circumstances by which the parties were surrounded, and under which the parties contracted, are enumerated in the instrument itself. Others are detailed in the evidence, all of which are admissible in considering the character and effect of the contract; its meaning as it was understood by the parties, and as it must be construed in law.

The contract first recites that the defendant is the owner of four hundred acres of land, and that he is desirous of two things: (1) To have the county seat located thereon; (2) to have the railroad cross at that place; and he agrees to employ the plaintiff to work to accomplish these objects, and the plaintiff agrees to work to accomplish these objects. Then follow the conditions of this contract, to-wit: (1) If the railroad crosses at or near this land, and (2) if the county seat is located thereon, then the defendant shall sell a certain amount of these lands to the plaintiff, to-wit, sixty acres in the sections named, the parties taking alternate lots. Now, if the contract stopped here, its language would be reasonably plain, and its meaning reasonably clear. It would be a conditional contract, in which the defendant agreed to pay or give the plaintiff sixty acres of land for his services, upon the condition precedent that the county seat should be located, and the railroad cross his land, as therein specified; but there follows the further agreement of the plaintiff, to-wit: "He agrees to pay or give to the railroad any and all the lands that may be agreed upon by said Buttz and railroad company, necessary to secure said location, out of the said sixty acres."

It will be observed that the plaintiff agrees "to pay or give" to the railroad company. He does not agree to convey; and in the concluding part of the contract the defendant, Colton, agrees to convey to the railroad company, "free of charge, the number of acres or lots agreed upon," and also "to convey the remainder of the sixty acres" to the plaintiff. This specific enumeration in the contract establishes clearly the fact that the whole sixty acres were not to be conveyed to the plaintiff, as would be at first understood by reading that part of the contract in which he agrees "to sell," etc., to him the sixty acres, but the construction must be that plaintiff was to make an agreement with the railroad company for as small amount of the sixty acres as he could, and that the de-

fendant should convey to it the amount agreed upon, and the balance, if any, to the plaintiff.  This interpretation is made clearer and more certain by the further agreement, to-wit:  " And the parties to this agreement hereby agree that the said railroad company shall have the right to take any alternate block or blocks, acres or parts of acres, or lots in any part of said described lands. All lands so taken by said railroad company, after being agreed upon, shall, as aforesaid, be deducted out of the said sixty acres to be paid over to party of the second part."  This agreement recognizes the fact that in no event was the defendant required to convey more than sixty acres, and that the railroad company would get as much less than sixty acres as the plaintiff could get it to consent to take.  The contract between plaintiff and defendant would seem to be drawn with reference to the contract had or negotiations pending between defendant and the agent, Delano ; and, though no reference is made thereto, yet the undertaking of the plaintiff is that he will get the railroad company to be satisfied with, and to take, less than sixty acres of defendant's land, otherwise he (the plaintiff) is to receive nothing under the contract.  So that it is incumbent upon him to show that the railroad company has consented and agreed to take less than sixty acres from the defendant, before he (the plaintiff) can have any claim for the conveyance of the remainder to him.  Here, it seems to us, is the vulnerable point of this case.  The only evidence of any agreement between the plaintiff and the railroad company is the testimony of Mr. Edwards. Buttz does not claim to have made any agreement with the company himself.  He says : " Major Edwards did the negotiating with him [Delano] at my request."  And the agreement claimed to have been made with Delano is related by Edwards as follows : " I saw Mr. Delano several times at different places, and I told him that Major Buttz had a contract of this kind ; that Colton was to give him sixty acres on certain conditions, and wanted to know if he could help it.  He said that the railroad company would require sixty acres themselves.  I had another talk with Mr. Delano, and in that conversation he said that he thought that the matter could be arranged by the railroad company taking forty acres from Colton, and get twenty acres from Harris ; and I sent Major Buttz to him with the contract.  At

that time I had never been out to Lisbon, and so don't remember details as well as I might. He said that he could get twenty acres from Harris, and take forty acres from Buttz, leaving Buttz twenty acres. I don't know what section this was in. *Question.* That was the final agreement between you, as agent for Buttz, and Delano in regard to that? *Answer.* Mr. Delano said they must have sixty acres, and, if they could get twenty acres of Harris, they would take the forty acres of Colton, leaving twenty acres for Buttz."

Edwards was interested with Buttz in getting the railroad company to take less than sixty acres, and was delegated by Buttz to make the necessary negotiations, the result of which is given above. Can it be said that this was any evidence of a contract or agreement to take forty acres on the part of the railroad company? The most that could possibly be claimed for it is the expression of an opinion by the agent of the company to the effect " that the matter could be so arranged." Does the language admit of any interpretation upon which the court can say that there was then a present, existing contract made, by which the railroad company agreed to accept forty acres from Colton, and take twenty acres from Harris? Harris was not present. He was yet to be seen. The contract could not be consummated without his assent. In fact, the minds of those present — Edwards and Delano — had only so far met as to draw out the expression of an opinion from Delano that he " thought the matter could be arranged." There is no evidence of any subsequent meeting of Edwards and Delano, and no evidence of any further conversation on the subject. Colton expressly denies any knowledge of any agreement between plaintiff and Delano or the railroad company to take less than sixty acres; but, on the contrary, he says the railroad company always insisted on the full amount, which he finally conveyed to it. Mr. Delano, called as a witness by the defense, and interrogated as to any agreement to take less than sixty acres from the defendant, says: "I never had any conversation with Mr. Buttz about forty acres, or sixty or eighty acres, or any other amount of land. I had a conversation with Edwards. *Question.* When was that? *Answer.* It was some time in 1881. *Q.* What was the conversation? *A.* It was about this contract. Edwards wanted I should

go into an arrangement by which I would release Colton, and make the arrangement directly with Buttz, instead of Colton, and take forty acres from Buttz. I asked him what I would make out of that; that I had the matter fixed up, and that I proposed to stick to it. In this conversation I got the idea that the land that was to be platted down there was forty acres; and I recollect asking Edwards, if I took forty acres, where any thing for Buttz would come from. *Q.* Did you in that or any other conversation with Edwards say that if he could get twenty from Harris, that you would be satisfied with forty? *A.* No, sir. *Q.* Any thing of that kind? *A.* No, sir. *Q.* Or that it could be arranged by taking forty acres from Colton, and twenty from Harris? *A.* No, sir. I told Edwards and Buttz that I would have nothing to do with any one but Colton or Harris; for I had made a contract with them, and that we had agreed as to what we would do. *Q.* State whether or not you at any time made a contract or arrangement with either Edwards or Buttz, or any one in connection with Edwards and Buttz, affecting the property in question. *A.* No, sir; not in any way, shape, or manner." Can it be said that this was any evidence of an existing contract upon which to base specific performance?

Again, without referring to the question of want of consideration for the alleged agreement between the plaintiff and the railroad company (although the inquiry by the agent, Delano, as to what the railroad company was to make out of the transaction by deducting twenty acres, and giving it to Buttz, would seem a very pertinent one), the objection that has urged itself most forcibly upon our attention is that, admitting some contract or agreement to have been made between Delano and the plaintiff by which the railroad company was to concede the twenty acres, is there any evidence of such a contract as would release the defendant from the claims of the railroad company upon him, and that he could plead as a defense in a suit by the railroad company requiring him to convey? Whether the agreement claimed to have been made between Delano and Buttz was one of release of right to, or an exchange of, real property, it was, in any event, a contract in relation to real property, and within the statute of frauds. Purcell v. Miner, 4 Wall. 517. And is there any evidence that

the contract sought to be established, or any part of it, was in writing, or that any part of it was ever performed? Did not Buttz, in his contract with Colton, bind himself to get the railroad company to agree to take less than sixty acres? Was the agreement such that it was revocable at any time on the part of the railroad company, or was it a binding agreement,— one that would protect Colton in his conveyance? Any agreement in writing whereby the railroad company had consented to Colton's conveying twenty acres to Buttz would undoubtedly have had that effect by way of estoppel, at least, if not as a contract; but, in absence of such an agreement, was Colton bound to convey to Buttz? He only agreed to convey to Buttz "the remainder of the said sixty acres, blocks, or lots," after he had conveyed to the railroad company the amount selected by it. It is true that the amount so selected by the railroad company must have first been agreed upon; but, in absence of such agreement, there was to be no conveyance to Buttz. Supposing that the agreement had been that the defendant was to convey the whole sixty acres to the railroad company, and that the railroad company was to convey to Buttz as much as he could get it to agree to do (and the real effect of the supposed agreement is not much different from the one the parties did make), could Buttz have required the railroad company to convey to him without showing that the contract he relied upon to enforce was a valid one, and was not within the statute of frauds? How, then, can he expect to recover of Colton, who, in a certain sense, was a trustee of the railroad company, without showing either a binding agreement, or such a consent to the immediate conveyance as would work an estoppel on the company?

The result of the contracts of Colton with the railroad company, and of Colton with Buttz, placed him (Colton), as we have already said, in a position in the nature of trustee as to the sixty acres of land. He was required and was willing to give that much land, and no more, to the railroad company. He was willing to convey it to the railroad company direct; or, with the consent of the railroad company, he was willing to convey twenty acres of it to Buttz himself. It would hardly be contended, if A. held land in trust for B., that C., claiming to have made a parol contract with B.,

could compel A. to convey ; and the case at bar is not essentially different. Colton holds the land subject to the agreement of Buttz and the railroad company. Whatever Buttz gets must come out of the sixty acres Colton has agreed to convey to the company. And it may not be out of place, here, to suggest that the record of this case discloses the fact that the railroad company would have been a proper, if it was not a necessary, party in determining the ultimate rights of the plaintiff and defendant. But whether Colton had made any such contract with the railroad company as would bind him to convey the whole sixty acres is not now before the court to determine. He had a right to insist that he should not be made liable so to do ; and he, therefore, had a right to insist that this plaintiff should comply with the terms of his contract, and make an agreement that would save him from any future claims of the railroad company. No such agreement is shown, or attempted to be shown; and no existing parol contract even can be gathered from the evidence produced.

Nor are we much better satisfied with the proof of a parol modification of the written contract. The rule is that such proof must be clear and satisfactory, and, as some of the cases say, free from doubt; but, barring the question as to whether there was any agreement between the parties to exchange the twenty acres in section 1 for twenty acres in section 11, we are met with the further objection that there was no such part performance as would take the agreement out of the statute, and the objection seems a fatal one. The plaintiff relies upon his performance of the conditions of the written contract, that the defendant has platted one hundred and twenty acres, one hundred of which was included in the original contract. As to this reliance of plaintiff, how can the original consideration lend such aid to the parol contract as to be a part performance of it ? The parol contract stands alone, in this respect; and, so far as this question is concerned, it is not unlike what it would be if defendant had performed the original contract, and the plaintiff sought to enforce the contract of exchange. It is the modification that must be partly performed or executed, to give it such life or power as to allow it to control a prior, existing written contract. The modification only has vitality by what has been done under it. No consideration has

been paid since the alleged modification; and, while the original consideration may feed the modified contract, it is impossible to see how prior acts can, by any system of reasoning, be held to be an execution or part performance of the subsequent contract of modification. But the platting of the twenty acres exchanged by defendant is claimed to be a part performance. Defendant claims this was done under his contract with the company. He so swears. There is no direct testimony on the part of plaintiff that it was done under the contract with plaintiff. No one could so swear but defendant. The only testimony is such as can be derived from the act of platting, and from defendant's own testimony. There is no reason apparent of record why the act of platting may not be as readily referable to the contract with the railroad company as to the contract with the plaintiff. Certainly, it cannot be so held by testimony clear and satisfactory. The supreme court in Williams v. Morris, 95 U. S. 457, says: "It is not enough that the act of part performance is evidence of some agreement; but it must be unequivocal and satisfactory evidence of the particular agreement charged in the bill or answer." See, also, Phillips v. Thompson, 1 Johns. Ch. 131; Jones v. Peterman, 3 Serg. & R. 543; 2 Story, Eq. Jur., § 762. If the case stood upon this error alone, we should be unwilling to say there was any evidence to warrant the court in concluding, as a question of law, that there was any such execution of the parol contract as would allow it to modify the prior contract in writing.

Again, we are unable to see how a decree for the specific performance of this contract can be entered under the pleadings and proofs now before the court. Courts cannot make contracts in attempting to enforce them. It can only enforce contracts made by the parties themselves. The decree in this case gives the plaintiff the half of a large number of blocks in the north-east one-fourth of section 11; whereas he was to have, under the contract sought to be enforced, alternate lots in that part of the platted land not taken by the railroad company. If this decree is rendered upon the theory that the railroad company has selected its forty acres under the contract so modified, as claimed by plaintiff, or upon the theory that the defendant has selected and appropriated the other twenty acres of this particular forty, we are un-

able to see why a specific performance under the evidence could not, with the same propriety, be enforced against any other part of the land claimed to be embraced within such modified contract. There is not a particle of testimony as to any agreement as to selection between the parties, nor as to any actual selection by either the railroad company or the defendant, unless the conveyance by the latter to the former be held to be such; and if it be so held, we are unable to see why such a conveyance can be deemed to be a selection or appropriation of land in section 11 more than in section 2. The conveyance was one and the same act. It conveyed the entire sixty acres by alternate half-blocks and acre tracts to the railroad company. It left the entire other half, or sixty acres, remaining to the defendant; and if the conveyance was a selection on the part of the railroad company in section 2, and the south forty in section 11, we are unable to see by what reasoning it was not as well a selection of the north forty in 11, or how the conveyance by the defendant of the north forty in 11 was any more a selection or appropriation by him under the alleged modified contract than his conveyance of the south forty in section 11, or that in section 2. It is in evidence that the land in section 11 was worth $75 per lot, and the court finds this twenty acres to be worth $24,000, while the evidence shows that in section 1 the land was worth but a very small amount. Certainly, the value of the land could not enter into the consideration of the court in determining that the contract should be enforced against this twenty acres alone. Specific performance is not invoked to punish parties for violation of contracts, but to prevent such violation. If the defendant is to be mulcted for damages for the violation of his contract, it must be done as damages for breach of such contract.

As to the objections urged in this court, that the contract is one which the courts will refuse to enforce on the grounds of public policy, the defendant not having made this an issue in the case, and the court below, of its own motion, not having seen fit to give it consideration, we content ourselves with reviewing the rulings and decisions made at the trial of the cause; venturing, however, the suggestion that the contract, as disclosed by the record, is not of the character which appeals strongly to the court of

equity to "strain its power to enforce a complete performance."

We are unable to see how, under any rule of law governing the specific performance of contracts, the decree can be sustained upon the pleadings and evidence now before this court.

The judgment must be reversed, and a new trial awarded; all the justices concurring, except McCONNELL, J., who, having been of counsel, did not sit in the case, and PALMER, J., who dissents.